# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) |
| ADVANCED BIONICS, LLC, | )<br>)<br>) |
| Defendant. | )<br>)<br>) C.A. No. 18-1530-JDW |
| ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG, | )<br>)<br>)<br>) |
| Counterclaim Plaintiffs, | )<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, | )<br>)<br>)<br>)<br>) |
| Counterclaim Defendants. | )<br>) |

**MED-EL'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL STAYS**

OF COUNSEL:

Kerry L. Timbers
Lisa M. Tittemore
Sharona H. Sternberg
Sunstein LLP
100 High Street
Boston, MA 02110
(617) 443-9292

Dated: July 29, 2021

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com
*Attorneys for Plaintiffs/Counterclaim Defendants*

## TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ................................................................................................................ 1

    A.    Partial Stays will Undoubtedly Simplify this Case .................................................. 1

    B.    The Eight Patents-In-Suit Do Not Need to Be Tried Together .............................. 3

    C.    Sonova/AB will not Suffer Prejudice from the Partial Stays ................................. 7

    D.    MED-EL's IPRs Were Timely Filed ...................................................................... 7

    E.    MED-EL Sought a Stay in Good Faith and as Soon as Practicable ........................ 8

III. CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases** **Page**

*AgroFresh Inc. v. Essentiv LLC*,
  No. 16-662-MN, 2019 WL 2327654 (D. Del. May 31, 2019)................................................ 3, 9

*Analog Devices, Inc. v Xilinkx, Inc.,*
  No. 19-2225-RGA (D. Del. Feb. 11, 2020) ................................................................................ 7

*Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*,
  No. 18-1679-RGA, 2020 WL 2849989 (D. Del. June 2, 2020)................................................. 8

*Bos. Sci. Corp. v. Edwards Lifesciences Corp.*,
  No. 16-275-JFB-SRF, 2018 WL 1891403 (D. Del. Apr. 20, 2018) ........................................ 10

*British Telecommc'ns PLC v. IAC/InterActiveCorp*,
  No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ........................................... 1, 7

*Cellectricon AB v. Fluxion Biosciences, Inc.*,
  No. 09-310-RMW, 2011 WL 1557987 (N.D. Cal. Apr. 25, 2011) ........................................... 5

*Enzo Life Scis., Inc. v. Digene Corp.*,
  No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003).................................................. 6

*Intel Corp. v. Broadcom Corp.*,
  173 F.Supp.2d 201 (D. Del. 2001).............................................................................................. 7

*Novartis AG v. HEC Pharm. Co.*,
  183 F. Supp. 3d 560 (D. Del. 2016)........................................................................................ 3, 9

*Pacesetter Inc. v. Cardiac Pacemakers*,
  No. 02-1337-DWF, 2003 WL 23303473 (D. Minn. Nov. 19, 2003)...................................... 10

*Parity Networks, LLC v. Juniper Networks, Inc.*,
  No. 18-06452-JSW, 2019 WL 8810383 (N.D. Cal. July 3, 2019) ............................................ 9

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
  No. 12-1461-LPS, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ................................................. 8

*Rovi Guides, Inc. v. Comcast Corp.*,
  No. 16-9278-JPO, 2018 WL 1726250 (S.D.N.Y. Apr. 6, 2018) ............................................... 5

*St. Jude Med. v. Volcano Corp.*,
  No. 10-631-RGA (D. Del. July 30, 2012) ................................................................................. 7

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
  No. 6:15-CV-551-RC-JDL, 2017 WL 379471 (E.D. Tex. Jan. 24, 2017 .................................. 3

*Uniloc U.S., Inc. v. Apple Inc.*,
   No. 18-00361-PJH, 2018 WL 2387855 (N.D. Cal. May 25, 2018) .......................................... 8

*VirnetX Inc. v. Apple Inc.*,
   No. 21-1672 (Fed. Cir. filed Feb. 4, 2021) ............................................................................. 3

*VLSI Tech. LLC v. Intel Corp.*,
   No. 18-966-CFC-CJB (D. Del. May 8, 2020) ........................................................................ 9

*Zimmer Surgical Inc., v. Stryker Corp.*,
   No. 16-679-RGA (D. Del. October 27, 2017) ........................................................................ 6

**Statutes**

35 U.S.C. § 315(b) ............................................................................................................................ 7

**Regulations**

77 Fed. Reg. 157 ............................................................................................................................ 2

**I.      INTRODUCTION**

Despite Sonova/AB's attempt to mischaracterize MED-EL's success at the PTAB as inconsequential, the most important developments since the prior motion for a partial stay are that the PTAB has: (1) found all of the asserted claims of Schmid '681 to be unpatentable; (2) found all but one of the asserted claims of Faltys '747 to be unpatentable; (3) instituted IPR proceedings against Karamuk '847, noting the "straightforward and strong" merits of MED-EL's case; and (4) instituted additional IPR proceedings against Maltan '746, noting the "strong" merits of MED-EL's case.

The proposed stays will undoubtedly simplify the case, the stage of the case is amenable to the stays, and the stays will not unduly prejudice Sonova/AB. The Challenged Patents are unrelated and readily separable from the Remaining Patents, despite Sonova/AB's attempts to conflate the technologies in order to complicate the issues. MED-EL diligently filed its IPRs and requested the stays in good faith soon after the PTAB's decisions and as the case approaches expert discovery, which will be a complex and onerous process given the number of technologies and experts involved. The stays will promote judicial economy, while allowing both parties to pursue their remaining claims.

MED-EL proposes to complete fact discovery on all patents before partially staying the case in order to address the Court's concern regarding AB's ability to conduct fact depositions of MED-EL's Austria-based witnesses given the "ever-evolving nature of COVID-19 restrictions."

**II.     ARGUMENT**

    **A.      Partial Stays will Undoubtedly Simplify this Case**

Courts are clear that the "most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial." *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2020 WL 5517283, at *9 (D. Del. Sept. 11, 2020).

1

Indeed, the IPR process was designed to "limit unnecessary and counterproductive litigation costs." 77 Fed. Reg. 157 at 48680 (Aug. 14, 2012).

The parties are near the beginning of expert discovery, and it would be a waste of the parties' and Court's time and resources to engage in a complex and expensive process that may very well be mooted by the Federal Circuit's decision(s) and the PTAB's decisions.

Resolution of Sonova/AB's pending appeal to the Federal Circuit of the PTAB's Final Written Decision finding all of the challenged claims of Schmid '681 unpatentable will undeniably simplify the case, especially given the likelihood that the Federal Circuit will affirm the PTAB's expert analysis. In the event that the Federal Circuit does not affirm the PTAB's findings, the Federal Circuit's guidance will still significantly simplify the issues for this Court.[1]

Similarly, a decision from the PTAB on rehearing or from the Federal Circuit on appeal of the Final Written Decision finding all but one of the asserted claims of Faltys '747 unpatentable will provide this Court with expert guidance regarding claim terms and scope, which will surely impact how the sole surviving asserted claim is addressed in this Court.

With respect to Karamuk '847 and Maltan '746 (the "Instituted Patents"), the potential for simplification is clear, as resolution of the IPR proceedings will either render Sonova/AB's claims moot or will provide expert guidance to the Court, and the potential for simplification is likely, given the PTAB's comments on the merits of MED-EL's "strong" IPR grounds. Additionally, the issue is not merely whether or not any (asserted) claims would survive IPR proceedings, but whether the PTAB's decisions would simplify the issues for the Court. Regardless of the outcomes

---

[1] Sonova/AB cites no authority for its inaccurate and misleading statistic that there is "a 50-50 chance" that at least some claims of the Instituted Patents will survive IPR, which is inconsistent with the statistics offered by the USPTO. In fact, according the USPTO's data, there is a 62% chance that all of the challenged claims will be found unpatentable. *See* MED-EL Br. at Ex. H.

of the IPRs, the PTAB's guidance will be relevant to this litigation, and, when final decisions issue, the IPRs will result in estoppel of certain defenses. *See* MED-EL Br. at 8, 14.

In any event, no matter the outcome, the Federal Circuit's and PTAB's decisions will streamline the district court case, and it would be extremely inefficient for the parties to embark on complex and expensive expert discovery and pretrial motion practice related to these patents before those decisions issue. At the very least, Schmid '681 must be stayed, as it would be particularly inefficient to conduct expert discovery and participate in motion practice with respect to an invalidated patent. Even though the Final Written Decision is subject to an appeal, courts routinely stay a case after a final written decision finding an entire patent to be invalid. *See, e.g.*, *Agrofresh, Inc. v. Essentiv LLC*, No. 16-662-MN, 2019 WL 2327654 (D. Del. May 31, 2019) (granting stay where PTAB found asserted claims unpatentable); *Novartis AG v. HEC Pharm Co. Ltd.*, 183 F. Supp. 3d 560, 562-563 (D. Del. 2016) (granting stay where PTAB found the patent at issue unpatentable as obvious); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-551-RC-JDL, 2017 WL 379471, at *1-3 (E.D. Tex. Jan. 24, 2017) (granting stay where PTAB found all asserted claims unpatentable for indefiniteness). Additionally, it is an open question whether preclusive effect has already attached to the decisions given the PTAB's final written decisions, which is an issue currently pending before the Federal Circuit in *VirnetX Inc. v. Apple Inc.*, No. 21-1672 (Fed. Cir. filed Feb. 4, 2021).

   **B.**  **The Eight Patents-In-Suit Do Not Need to Be Tried Together**

Sonova/AB's argument that the patents are related and must be tried together is unavailing. The technologies at issue in the patents are not as related as Sonova/AB suggests. Beginning with the Schmid '681 and the Zimmerling patents, although all involve magnets, the overlap ends there. They are aimed at different inventions, have different inventors and priority dates (implicating different prior art and invalidity theories), and require different infringement theories against

different accused products. Schmid '681 discloses transcutaneous medical devices that use diametric magnetization, whereas the Zimmerling patents disclose a magnet with a magnetic dipole moment that remains substantially parallel to the planar outer surface of the coil housing when the magnet rotates.

AB's unsupported characterization of Schmid '681 as one of the "key pieces of prior art" to MED-EL's Zimmerling patents does not make it so. In fact, the PTAB explicitly rejected that argument. MED-EL Br., Ex. G (Decision Denying Institution). In fact, Schmid '681 does not mention cochlear implants, MRIs, MRI-safety problems, or rotation of the magnets, all key issues for the Zimmerling patents. *See id*. at 19 ("[AB] does not rely on Schmid to disclose a magnet that rotates."). Moreover, Sonova/AB's "duplicative discovery" complaints regarding expert testing are unavailing, as it provides no reasoning why separate expert testing regarding entirely separate Schmid '681 and Zimmerling patents is "duplicative."

The other Challenged Patents are also unrelated to and easily separable from the Remaining Patents. *See* MED-EL Br. at 3-4. Sonova/AB's description of an "umbrella" of cochlear implant technology does not explain why the various technologies are actually related. Because Sonova/AB cannot credibly contend that the patents or technologies are similar, it focuses on an alleged overlap in the accused product list and an unsupported claim that sharing named inventors somehow underscores the interrelatedness of the Faltys '747, Maltan '746, and Overstreet '308 patents, rather than explaining how the various, distinct technologies are allegedly similar. As previously explained, Sonova/AB's chart depicting the purported overlap of accused MED-EL products is highly misleading because Sonova/AB accuses entirely different aspects and features of these products with respect to each patent. *See* D.I. 144, at 3. Simply put, Sonova/AB's allegations across its patents are not related, and there is essentially no overlapping evidence with

4

respect to either infringement or invalidity. Even if there are some intersecting sales figures, the damages cases and analyses will be entirely different given that the features for each patent are wholly unrelated, as outlined below:

- Faltys '747 discloses a computer with access to software which can be used for modifying the parameters of acoustic and electric stimulation hearing devices when such devices are located in the same ear;
- Maltan '746 discloses a cochlear implant sound processor that is powered by a rechargeable battery that is permanently integrated into the sound processor;
- Karamuk '847 discloses hydrophobic coatings on portions of "hearing aid devices" that require gas permeability and is not specifically directed to cochlear implant systems;
- Overstreet '308 discloses a method of "fitting," or setting stimulation threshold levels, of cochlear implants; and
- Crawford '647 discloses a modular external headpiece portion of a cochlear implant system.

Clearly, each of these patents is directed towards a different technology, and Sonova/AB accuses various, unrelated aspects of MED-EL's products of infringing these patents.

In an analogous case, where the patents were similarly unrelated, the court granted a motion to partially lift the stay and bifurcate the case with respect to one patent, finding that "even if certain evidence would overlap," there was no meaningful dispute that the one patent involved different technology than the other. *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-9278-JPO, 2018 WL 1726250, at *3 (S.D.N.Y. Apr. 6, 2018) ("That the…claims might involve significantly different technology is perhaps unsurprising, given that IPR was denied on this patent and granted on the other patents at issue."); s*ee also Cellectricon AB v. Fluxion Biosciences, Inc.*, No. 09-3150-

RMW, 2011 WL 1557987, at *3 (N.D. Cal. Apr. 25, 2011) (granting motion to lift the stay and bifurcate one patent from others still under PTAB review even though all of the patents were directed to different aspects of microfluidic arts since "these different technologies will likely involve different invalidity defenses, damage calculations, and infringement theories").

Also, given the number of patents and complexity of the technologies, [2] it is highly likely that this case would need to be split prior to trial regardless of whether a stay is granted.[3] Courts in this district often decide to bifurcate complex patent cases prior to trial "in order to avoid jury confusion on complex legal issues." *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 WL 21402512, at *4 (D. Del. June 10, 2003). "In the context of patent cases, '[e]xperienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of evidence presented to a jury.'" *Id*. at *5 (citation omitted). Delaware courts routinely proceed with separate trials involving competitor cross-patents to simplify the issues for the jury. *See e.g., Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA, slip op. at 1 (D. Del. Oct. 27, 2017) (D.I. 81) (deferring decision on motion to separate but noting that the court has "routinely (indeed, to my memory, always) separated patent infringement claims from patent infringement counterclaims" where it "involved the assertion of

---

[2] In a September 5, 2019 letter of opposition to Sonova/AB's request to amend its counterclaims to assert Maltan '746 and Karamuk '847, MED-EL expressed to Judge Noreika that the "late introduction of these patents will unfairly prejudice MED-EL by adding significant complexity to the case and causing substantial delay," noting that the addition of yet two more distinct technologies would require additional technical experts and would be confusing to a jury. D.I. 39.

[3] MED-EL noted in the Rule 16 joint statement on March 13, 2019, that "Given the parties' claims and counterclaims involving a number of different patents and technologies, MED-EL intends to seek two separate consecutive trials, the first for MED-EL's claims of patent infringement followed by a separate trial, with a new jury, for Advanced Bionics' claims of patent infringement." D.I. 16 at 12. Sonova/AB did not contend that the trial must move forward as one, but rather that "[i]t is premature to attempt to determine at the very outset of the case how trial should be structured, including whether two separate trials will be necessary." *Id.* at 12-13.

multiple patents by both sides") (citing cases); *see also Analog Devices, Inc. v Xilinx, Inc.*, No. 19-2225-RGA (D. Del. Feb. 11, 2020) (D.I. 26 at 3-8) (discussing court's practice to sever trials that involved cross patents); *St. Jude Med. v. Volcano Corp.*, No. 10-631-RGA, slip op. at 1 (D. Del. July 30, 2012) (D.I. 323) (setting separate trials for claim and counterclaim for infringement because of "the possibility of jury confusion"); *Intel Corp. v. Broadcom Corp.*, 173 F.Supp.2d 201, 205 (D. Del. 2001) ("In order to simplify the issues before the jury and to shorten the length of the jury trial, the court has since required that the trial to proceed in two parts" for two sets of patents).

### C.  Sonova/AB will not Suffer Prejudice from the Partial Stays

Aside from "delay" and its general interest in keeping all of its patents in one case, Sonova/AB does not point to any specific hardship or inequity that it will suffer as a result of the stays, which weighs against a finding of undue prejudice. *See British Telecomms.*, 2020 WL 5517283, at *5 (citing cases). Sonova/AB's status as a competitor alone does not demonstrate that it will suffer a competitive disadvantage by the stays, especially considering that its allegedly competing products do not contain the patented features described by its patents, and any infringement could be remedied by monetary damages. *See* MED-EL Br. at 23. Indeed, many of MED-EL's products accused by Sonova/AB of infringement are no longer sold (or were never sold), which underscores that Sonova/AB will not be unduly prejudiced by the stays.[4]

### D.  MED-EL's IPRs Were Timely Filed

MED-EL filed all of its IPR petitions within the one-year statutory limit set in 35 U.S.C. § 315(b). While Sonova/AB casts MED-EL's compliance with the statute as a dilatory tactic, case law does not support that position. Given the number of different patents and technologies in this

---

[4] MED-EL no longer sells the versions of the implants known as SYNCHRONY, SONATA, MED-EL CONCERT, and PULSAR, and no longer sells various externals, including SONNET, SONNET EAS, RONDO, RONDO 2, TEMPO+, and OPUS. MED-EL has never sold DUET or DUET 2 in the United States. MED-EL's MAESTRO software is provided free of charge.

7

case, which involve completely different theories of invalidity and two of which Sonova/AB waited to assert nearly a year after it asserted its first four counterclaim patents, it is understandable that MED-EL needed time to prepare its petitions, and this does not demonstrate undue delay. *See Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. 12-1461-LPS, 2014 WL 3819458, at *3, *5 (D. Del. Jan. 15, 2014) (the filing of a petition at "the last day of the statutory deadline" did not show that defendant sought "an inappropriate tactical advantage"); *Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*, No. 18-1679-RGA, 2020 WL 2849989, at *2 (D. Del. June 2, 2020) (granting stay even where petitions were filed at the end of the prescribed statutory period); *Uniloc U.S., Inc. v. Apple Inc.*, No. 18-00361-PJH, 2018 WL 2387855, at *3 (N.D. Cal. May 25, 2018); *see also* MED-EL Br. at 19-20.

      **E.**     **MED-EL Sought a Stay in Good Faith and as Soon as Practicable**

The timing of MED-EL's motion to stay was not the result of nefarious plotting, but rather a good faith proposal to streamline the case at the onset of the most burdensome stage of the case, namely, expert discovery, summary judgment, and trial preparation. *See* MED-EL Br. at 16-17. Unlike cases finding inappropriate tactical advantage, the instant case is not at the very late stages of litigation, nor did this filing come after MED-EL suffered an adverse case event. *See Princeton Digital*, No. 12-1461-LPS, 2014 WL 3819458, at *4–5. In fact, this filing comes after MED-EL experienced great success at the PTAB.

MED-EL sought a stay soon after the PTAB issued Final Written Decisions against Schmid '681 and Faltys '747 and reasonably soon after the PTAB's institution of the IPRs against Karamuk '847 and Maltan '746. The impetus for filing the motion at this time was to narrow and simplify the case after the PTAB invalidated all of the asserted claims of Schmid '681 and all but one of the asserted claims of Faltys '747 and just as the parties are about to embark on expert discovery,

8

which will require an enormous investment of resources given the number of experts required to analyze eight separate patents directed to seven different technologies.

This motion was not an underhanded move to delay discovery, avoid depositions, or avoid producing any last few remaining documents. To the contrary, MED-EL does not seek to stay fact discovery at all.[5] At the time the stays would go into effect, this matter will be at a natural and efficient pausing point, as the parties have not begun expert discovery or pretrial motion practice.

Much of Sonova/AB's argument hinges on the fact that many of the cases MED-EL relies on involve full stays, which is because it is unusual for a single case to have so many different patents involving different technologies, inventors, prior art, and accused products or features of those products. Granting a partial stay is well within this Court's discretion, as many other courts have found. *See, e.g., AgroFresh Inc. v. Essentiv LLC*, No. 16-662-MN, 2019 WL 2327654 (D. Del. May 31, 2019) (granting partial stay of one patent); *Novartis AG v. HEC Pharm Co.*, 183 F. Supp. 3d 560 (D. Del. 2016) (same); *Oral Order, VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC-CJB (D. Del. May 8, 2020) (granting partial stay of patents under review by PTAB and moving ahead with remaining claims "to maximize efficiency"); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 18-06452-JSW, 2019 WL 8810383, at *3 (N.D. Cal. July 3, 2019) ("given the large number of Patents-in-Suit, disputed claims, and disputed claim terms," a partial stay "would permit the parties to focus their litigation efforts on the non-IPR Patents").

Moreover, the cases cited to by Sonova/AB in which partial stays were denied are readily distinguishable, since they all involve patents that were closely related or were at much later stages of litigation. *See, e.g., Bos. Sci. Corp. v. Edwards Lifesciences Corp.*, No. 16-275-JFB-SRF, 2018

---

[5] Thus, it is unnecessary to litigate further Sonova/AB's lengthy and misleading discussion of fact discovery.

WL 1891403, at *2 (D. Del. Apr. 20, 2018) (disfavoring partial stay where trial was only three months way and the patents all involved "similar prior art and technology"); *Pacesetter, Inc. v. Cardiac Pacemakers Inc.*, No. 02-1337-DWF, 2003 WL 23303473, at *1 (D. Minn. Nov. 19, 2003) (rejecting partial stay where the patents are all "inextricably intertwined" and "[t]here is no discernable demarcation of issues, experts, or products").

Sonova/AB will still have the opportunity to have its day in court, and as discussed, and it is highly probable that the case would need to be split into more than one trial anyway.

### III.   CONCLUSION

For the forgoing reasons, MED-EL respectfully requests that the Court grant the proposed partial stays.

|  |  |
|---|---|
| OF COUNSEL: | /s/ Frederick L. Cottrell, III |
|  | Frederick L. Cottrell, III (#2555) |
|  | Christine D. Haynes (#4697) |
| Kerry L. Timbers | Richards, Layton & Finger, P.A. |
| Lisa M. Tittemore | One Rodney Square |
| Sharona H. Sternberg | 920 North King Street |
| Sunstein LLP | Wilmington, DE 19801 |
| 100 High Street | (302) 651-7700 |
| Boston, MA 02110 | cottrell@rlf.com |
| (617) 443-9292 | haynes@rlf.com |
| ktimbers@sunsteinlaw.com |  |
| ltittemore@sunsteinlaw.com | *Attorneys for Plaintiffs/Counterclaim Defendants* |
| ssternberg@sunsteinlaw.com |  |

Dated:  July 29, 2021