UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED BIONICS, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 18-1530-JDW ) |
| ADVANCED BIONICS, LLC ADVANCED BIONICS AG, and SONOVA AG, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> Counterclaim Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DECLARATION OF MARIO KONEGGER IN SUPPORT OF MED-EL'S BRIEF IN SUPPORT OF JOINT MOTION TO SEAL EXHIBIT 2 TO ADVANCED BIONICS' ANSWERING BRIEF IN OPPOSITION TO MED-EL'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF GERALD R. POPELKA**

I, Mario Konegger, declare as follows:

1. I am Head of IP of MED-EL Elektromedizinische Geräte Ges.m.b.H. (collectively with MED-EL Corporation, USA, "MED-EL"). In my role as Head of IP, I am personally familiar with the extensive efforts MED-EL takes to protect its confidential information and am actively involved with the present litigation. In my role as Head of IP, I have met with various

representatives of MED-EL's Leadership Team and Finance team regarding MED-EL's highly confidential information in Exhibit 2 to Advanced Bionics' Answering Brief in Opposition to MED-EL's *Daubert* Motion to Exclude Testimony of Gerald R. Popelka (Popelka Opposition).

2.  I submit this Declaration in support of MED-EL's brief in support of sealing the Exhibit 2.

3.  I have been provided and have reviewed a redacted version of Exhibit 2 (Popelka Rebuttal), which were redacted to remove reference to information of Sonova/AB and which I was therefore permitted to see under the protective order in this case.

4.  It is critical to MED-EL that the Court maintain under seal MED-EL's highly confidential information contained in the Popelka Opposition and Exhibit 2. On page 80 of Exhibit 2, at paragraph 110, Dr. Popelka provides information from a highly confidential SWOT (strength, weakness, opportunities, threats) analysis conducted by MED-EL in October 2020. MED-EL has always taken extensive measures to maintain the confidentiality of such information. MED-EL has been extremely concerned about the protection of its highly confidential information during this litigation, and has been very careful to protect this information at all times.

5.  MED-EL designated the information reflected in Exhibit 2 as CONFIDENTIAL – ATTORNEYS' EYES ONLY under the protective order in the case.

6.  I have reviewed MED-EL's proposed redactions to Exhibit 2. MED-EL's proposed redactions seek to redact portions of the documents which refer to, quote, summarize, and/or otherwise disclose MED-EL's sensitive, highly confidential, SWOT analysis. Specifically, the information reflects MED-EL's highly confidential competitive analysis and potential future plans.

7. This information is highly confidential and sensitive information that MED-EL does not disclose publicly and wishes to remain confidential. MED-EL operates in a highly competitive market with a limited number of competitors, and if the highly confidential information contained in Exhibit 2 were made public, MED-EL's competitors would be able to make decisions about where, when, and how to offer directly competitive goods with full knowledge of MED-EL's strengths, weaknesses, and future plans. MED-EL's competitors would gain significant advantage in creating their own business strategies, which would put MED-EL at a significant competitive disadvantage, causing it real and serious harm.

8. Based on my personal knowledge and experience in the cochlear implant business, I believe that disclosure of this information would significantly harm MED-EL by revealing MED-EL's highly confidential data and trade secrets with its direct competitors and with the public generally.

9. MED-EL manufactures and sells cochlear implants in the hotly competitive cochlear implant industry to help restore hearing for individuals with severe-to-profound sensorineural hearing loss. There are three major cochlear implant manufacturers worldwide – MED-EL, Sonova/AB, and Cochlear Limited. Additionally, there are newer entrants to the cochlear implant market, including, for example, Oticon Medical and Nurotron. Because there are so few competitors in the cochlear implant market, the market is highly competitive, and any information about one of the competitors, even seemingly minor information, may prove competitively advantageous.

10. MED-EL is a privately held company and is considered small by comparison to its current primary competitors, Sonova/AB and Cochlear Limited. One of the advantages that MED-EL has over its competitors is its status as a privately held company. As a privately held company,

MED-EL does not publish its SWOT or other competitive analyses, which are maintained as highly confidential and shared internally at MED-EL with only limited employees on a strictly and carefully maintained need-to-know basis.

11. In response to each request by Sonova/AB for documents or information relating to MED-EL's business plans, MED-EL consulted with counsel to understand the legal requirements of providing information to counsel for Sonova/AB, to identify the relevant information requested, and to limit any unnecessary disclosure of confidential information. Approval to disclose documents and information in this case under the CONFIDENTIAL – ATTORNEYS' EYES ONLY designation came from individuals at the highest levels of MED-EL's organization, primarily MED-EL's CEO Ingeborg Hochmair.

12. The information in Exhibit 2 that MED-EL proposes to protect has only been shared as CONFIDENTIAL - ATTORNEYS' EYES ONLY under the protective order in this case and can currently only be seen by the parties' outside counsel and experts.

13. If MED-EL's competitors in the cochlear implant industry were to have access to the data and information regarding MED-EL's SWOT analysis, reflected in Exhibit 2, it would put MED-EL at a significant competitive disadvantage and cause MED-EL serious harm by supplying MED-EL's competitors with information regarding MED-EL's strengths, weaknesses, and future plans, which would allow MED-EL's competitors advantage in creating their own business strategies.

14. Accordingly, to prevent serious, real harm to MED-EL, the Court must maintain under seal MED-EL's highly confidential information contained in Exhibit 2.

I declare under the penalty of perjury that the foregoing is true and correct.

Date: April 29, 2022

                                  Respectfully submitted,

                                  */s/ M. Konegger*

                                  Mario Konegger
                                  Head of IP
                                  MED-EL Elektromedizinische Geräte
                                  Ges.m.b.H.
                                  Fuerstenweg 77a
                                  6020 Innsbruck, AT