# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED BIONICS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 18-1530-JDW |
| ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br><br>Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MED-EL'S BRIEF IN SUPPORT OF JOINT MOTION TO SEAL EXHIBITS 108-109 TO MED-EL's REPLY BRIEF IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF JULIE L. DAVIS**

OF COUNSEL:

Kerry L. Timbers
Lisa M. Tittemore
Sharona H. Sternberg
Sunstein LLP
100 High Street
Boston, MA 02110
(617) 443-9292

Frederick L. Cottrell, III  (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

Dated:  May 10, 2022

*Attorneys for Plaintiffs/Counterclaim Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL AND FACTUAL BACKGROUND ...........................................................1

    A. Procedural Background ................................................................................................1

    B. Factual Background .....................................................................................................2

III. LEGAL STANDARD .............................................................................................................3

IV. ARGUMENT ..........................................................................................................................4

    A. Disclosure of MED-EL's Highly Confidential Information in Exhibits 108 and 109 will cause a clearly defined and serious injury to MED-EL. .......................................................................................................5

        1. MED-EL's Highly Confidential Revenues and Unit Sales information in Exhibit 108 must be protected to avoid real and serious harm to MED-EL. .............................................................................5

        2. MED-EL's highly confidential market share data and competitive analysis information in Exhibit 109 must be protected to avoid real and serious harm to MED-EL. ...............................6

        3. MED-EL's highly confidential information regarding MED-EL's damages calculations must be protected to avoid real and serious harm to MED-EL. ...............................................................7

    B. MED-EL's confidential information in the Exhibit 108 and 109 should be protected as it is the type of information that courts in the Third Circuit frequently protects .......................................................................8

V. CONCLUSION .....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Amgen Inc. v. Amneal Pharms. LLC*,
   No. CV 16-853-MSG, 2021 WL 4133516 (D. Del. Sept. 10, 2021), *opinion vacated in part on reconsideration,* No. CV 16-853-MSG, 2021 WL 4843959 (D. Del. Oct. 18, 2021) ................................................................................................. 9

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   800 F.2d 339 (3d Cir. 1986) ........................................................................................ 4

*Del. Display Grp. LLC v. LG Elecs. Inc.*,
   221 F. Supp. 3d 495 (D. Del. 2016) ............................................................................ 9

*Genentech, Inc. v. Amgen, Inc.*,
   No. 17-1407-CFC, 2020 WL 9432700 (D. Del. Sept. 2, 2020), *report and recommendation adopted*, No. CV 17-1407-CFC, 2020 WL 9432702 (D. Del. Oct. 1, 2020) ................................................................................................................ 9

*GFI, Inc. v. Franklin Corp.*,
   265 F.3d 1268 (Fed. Cir. 2001) ................................................................................... 3

*In re Avandia Mktg.,Sales Pracs. & Prod. Liab. Litig.*,
   924 F.3d 662 (3d Cir. 2019) .................................................................................. 3, 4

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001) ........................................................................................ 3

*Littlejohn v. Bic Corp.*,
   851 F.2d 673 (3d Cir. 1988) ........................................................................................ 3

*Miller v. Ind. Hosp.*,
   16 F.3d 549 (3d Cir. 1994) .......................................................................................... 4

*Mosaid Techs. Inc. v. LSI Corp.*,
   878 F. Supp. 2d 503 (D. Del. 2012) ............................................................................ 4

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) .................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 26(c)(1)(G) ................................................................................................ 9

I. **INTRODUCTION**

Plaintiffs and Counterclaim Defendants MED-EL Elektromedizinische Geräte Ges.m.b.H. and MED-EL Corporation, USA's (collectively, "MED-EL") respectfully request the Court to seal highly confidential information contained in Exhibits 108 and 109 to MED-EL's Reply Brief in Support of *Daubert* Motion to Exclude Opinions and Testimony of Julie L. Davis (Reply Brief), consistent with the Court's earlier decisions regarding sealing the same or similar information. *See* D.I. 274.

MED-EL's highly confidential information contained in Exhibits 108-109 must be maintained under seal in order to prevent serious and real harm to MED-EL. Release of MED-EL's highly confidential information contained in Exhibits 108-109 to the public and MED-EL's business competitors would create a clearly defined and serious injury to MED-EL, as discussed in detail below. MED-EL respectfully requests that the Court maintain specific portions of Exhibits 108-109 under seal, including specific portions of paragraph 67 and Table 23 of Exhibit 108 (Sussman Report), and specific portions of sentences of pages 28 and 29 of Exhibit 109 (Sussman Dep.).

II. **PROCEDURAL AND FACTUAL BACKGROUND**

A.   **Procedural Background**

On October 3, 2018, MED-EL filed its complaint against Sonova/AB, asserting the Zimmerling '057 and Zimmerling '909 patents. On November 28, 2018, Sonova/AB filed counterclaims, asserting the Schmid '681, Faltys '747, Overstreet '308, and Crawford '647 patents. On October 8, 2019, Sonova/AB amended its counterclaims to assert the Maltan '746 and Karamuk '847 Patents. Pursuant to the Court's Order of July 30, 2021 (D.I. 157), all claims concerning the Schmid '681, Karamuk '847, and Maltan '746 patents have been stayed since the

close of fact discovery.[1] The parties completed expert discovery on the patents that were not stayed, and pursuant to the Court's order of April 4, 2022, summary judgment and Daubert motions were filed on April 7, 2022, answering briefs in opposition were filed on April 29, 2022, and reply briefs are due on or before May 10, 2022.

During the parties' meet and confer, the parties agreed to file a joint motion to seal the Reply Brief and certain exhibits and to file individual briefs in support of the motion with respect to each parties' own highly confidential information.

### B.   Factual Background

MED-EL manufactures and sells cochlear implant systems in the hotly competitive cochlear implant industry. Decl. at ¶ 9.[2] There are three major cochlear implant manufacturers worldwide – MED-EL, Sonova/AB, and Cochlear Limited – as well as some newer entrants to the marketplace (for example, Oticon Medical and Nurotron). *Id.* Because there are so few competitors in the cochlear implant marketplace, the market is highly competitive. *Id.*

MED-EL is a small company by comparison to its (current) primary competitors, Sonova/AB and Cochlear. Decl. at ¶ 10. One of the advantages that MED-EL has over its competitors is its status as a privately held company. *Id.* As a privately held company, MED-EL does not publish its financial information, which is maintained as highly confidential and shared internally at MED-EL with only limited employees on a strictly and carefully maintained need-to-know basis. *Id.*

---

[1] Pursuant to subsequent IPR decisions by the PTAB, the Maltan '746, Karamuk '847, Schmid '681, and all but claim 3 of the Faltys '747 patent, are invalid. The deadline for appeal regarding Maltan '746 and Karamuk '847 is June 2, 2022, an appeal regarding Schmid '681 is pending at the Federal Circuit, and no appeal was filed regarding Faltys '747.

[2] Citations to "Decl." refer to the Declaration of Mario Konegger in Support of MED-EL's Brief in Support of Joint Motion to Seal Exhibits 108 and 109 to MED-EL's Reply Brief in Support of *Daubert* Motion to Exclude Opinions and Testimony of Julie L. Davis.

Unlike in other industries, the participants in the cochlear implant industry do not provide financial data to independent, third-party data analytics organizations for use in publishing analysis or reports on the cochlear implant market. Decl. at ¶ 11. While third parties compile, analyze, and publish data regarding the hearing industry in general, the data does *not* extend to the cochlear implant industry. *Id.* Thus, MED-EL and its competitors in the cochlear implant industry do not share or publish financial or competitive business information of the type contained in Exhibits 108 and 109 (an exception is the extent to which Sonova/AB and Cochlear Limited are required to make mandatory disclosures as public companies).

MED-EL takes extensive steps – even strictly limiting access within MED-EL – to maintain its financial information, including information with respect to unit sales, revenues, costs, profit margins, licensing, and the like, as strictly confidential. Further, MED-EL has taken extreme care during this litigation to protect the confidentiality of this information. MED-EL provides the Declaration of Mario Konegger in support of its requests herein.

### III. LEGAL STANDARD

The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues. The issues raised by the instant motion to seal thus should be decided pursuant to Third Circuit law. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001).

Third Circuit common law presumes that the public has a right of access to judicial records, but also protects business records when access would cause economic harm, e.g., competitive harm. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that the right is not absolute." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (citations and quotations omitted); *see also Littlejohn v.*

3

*Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("Despite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing").

A movant overcomes the presumption of access by showing "that the interest in secrecy outweighs the presumption." *In re Avandia Mktg.*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). A movant may make this showing by demonstrating that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking protection. *See In re Avandia Mktg.*, 924 F.3d at 672 (citing *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). The Court applies a "good cause" standard to justify sealing or redacting judicial records, which requires a "balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public.") *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507–08 (D. Del. 2012).

## IV.     ARGUMENT

Good cause exists to seal portions of Exhibit 108 (Sussman Report) and Exhibit 109 (Sussman Dep.) that contain MED-EL's highly confidential financial and competitive business information, as disclosure of such information would cause real and serious competitive harm to MED-EL. This Court has found good cause to redact "confidential financial information," which "could cause real and serious harm" if disclosed, and is "the sort of material that courts have frequently redacted." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012).

Exhibits 108 and 109 contain highly sensitive, non-public financial and competitive business information belonging to MED-EL. MED-EL seeks to protect only the specific, limited, highly confidential information relating to MED-EL's unit sales, revenue, average selling price,

costs, inventory, margins, sales growth, market share, market penetration, damages calculations, and licensing strategies.

In order to protect this information, MED-EL proposes to provide the Court with a redacted version Exhibits 108 and 109, redacting only the material specifically identified below. MED-EL's proposed redactions are narrow in scope and refer only to MED-EL's confidential, sensitive financial or business information in order to prevent the serious harm to MED-EL which would be caused by its public release.

      **A.**      **Disclosure of MED-EL's Highly Confidential Information in Exhibits 108 and 109 will cause a clearly defined and serious injury to MED-EL.**

Public disclosure of MED-EL's highly confidential information will cause MED-EL present and future commercial and competitive harm by supplying MED-EL's competitors with information regarding at least MED-EL's financial health, business operations, and competitive strategies. MED-EL's competitors would gain significant advantage in creating their own business strategies, which would put MED-EL at a significant competitive disadvantage, causing it real and serious harm. Decl. at ¶ 14.

      **1.**      **MED-EL's Highly Confidential Revenues and Unit Sales information in Exhibit 108 must be protected to avoid real and serious harm to MED-EL.**

MED-EL proposes to redact specific portions of paragraphs 67 of Exhibit 108 (Sussman Report), which reflects MED-EL's highly confidential revenue information, including actual and expected revenues. *See* Decl. at ¶ 15. Public access to information about MED-EL's actual and expected revenues for sales of its 3T MRI compatible implants would, among other things, reveal relative strengths and weaknesses in different markets and would allow MED-EL's competitors to make strategic decisions about where and how to compete with MED-EL, causing competitive

5

harm to MED-EL. Decl. at ¶ 16. MED-EL's competitors could use this information to weaken MED-EL's position in the marketplace. Decl. at *Id.*

For example, the public disclosure of MED-EL's historical revenue and growth data would provide MED-EL's competitors with insight regarding the size and strength of MED-EL's business overall, which would cause competitive harm to MED-EL. Decl. at ¶ 17. Newer entrants to the cochlear implant marketplace would be able to use MED-EL's revenues to inform investment decisions and market entry, a competitive advantage that MED-EL did not have at the time of its own market entry. Decl. at ¶ 18.

As Sonova/AB's own witnesses testified at deposition, Sonova/AB (and other competitors) currently rely on knowledge of the local market and assumptions of sales to estimate MED-EL's market share because MED-EL is not a public company with publically accessible financial records. MED-EL's status as a privately held company that is not required to report its financial data is one of MED-EL's competitive advantages in the highly competitive cochlear implant market. *See* Decl. at ¶ 10.

MED-EL's proposed redactions to paragraph 67 of Exhibit 108 (Sussman Report) are narrow in scope and refer only to MED-EL's confidential, sensitive financial information. The proposed redactions do not hinder the public's understanding of the basis for relief sought in the Reply Brief because the subject matter of the *Daubert* motion would remain public.

> **2. MED-EL's highly confidential market share data and competitive analysis information in Exhibit 109 must be protected to avoid real and serious harm to MED-EL.**

MED-EL proposes to redact specific portions of sentences on pages 28 and 29 of Exhibit 109 (Sussman Dep.), which contain highly confidential information relating to MED-EL's internal market share analysis and competitive analyses. *See* Decl. at ¶ 21.

6

Public access or disclosure of MED-EL's market share estimates or analysis of its customer base would allow MED-EL's competitors to understand MED-EL's market focus, which would allow MED-EL's competitors to use MED-EL's data to develop targeted marketing campaigns for their own competing products in markets where their own market estimates may not have indicated opportunity and to make strategic decisions regarding which markets to target based on MED-EL's confidential information, which would cause harm to MED-EL. Decl. at ¶ 22.

MED-EL's proposed redactions to Exhibit 109 (Sussman Dep.) are narrow in scope and refer only to MED-EL's confidential, competitive business information. The proposed redactions do not hinder the public's understanding of the basis for relief sought in the Reply Brief because the subject matter of the *Daubert* motion would remain public.

### 3. MED-EL's highly confidential information regarding MED-EL's damages calculations must be protected to avoid real and serious harm to MED-EL.

MED-EL proposes to redact specific numerical values from Table 23 of Exhibit 108 (Sussman Report), which relate to MED-EL's damages calculations. Decl. at ¶ 19.

Public access to information MED-EL's damages calculations, including the high-level number for each category of damages will cause MED-EL significant harm. Decl. at ¶ 20. For example, MED-EL's competitors could use their understanding of the cochlear implant marketplace and of their own unit selling prices to backwards engineer MED-EL's sales figures. Decl. at *Id.* Additionally, such disclosure would provide competitors, such as Cochlear, one of MED-EL's major competitors and others, to know how MED-EL is being harmed by Sonova/AB's infringement, which would provide competitors with an unfair advantage over MED-EL. Decl. at *Id.*

MED-EL's proposed redactions to Table 23 of Exhibit 108 are narrow in scope and refer only to MED-EL's confidential damages calculation information. Specifically, MED-EL proposes

7

to redact only the precise numerical data. The proposed redactions do not hinder the public's understanding of the basis for relief sought in the Reply Brief because the subject matter of the *Daubert* motion would remain public.

> **B. MED-EL's confidential information in the Exhibit 108 and 109 should be protected as it is the type of information that courts in the Third Circuit frequently protects.**

The information contained in Exhibits 108 and 109 contains highly sensitive, non-public financial and competitive business information belonging to MED-EL relating to at least sales revenue, market share, and damages calculations that is not known to competitors or to the general public. To date, this information has only been shared as CONFIDENTIAL - ATTORNEYS' EYES ONLY under the protective order, and can only be seen by the parties' outside counsel and experts. Decl. at ¶ 13. MED-EL and its counsel have taken strict and careful measures to maintain this information as confidential through the litigation of this dispute.

For example, in response to each request by Sonova/AB for documents or information relating to MED-EL's financial data or competitive business information, MED-EL specifically consulted with counsel and with Mr. Sussman to understand the legal requirements of providing information to counsel for Sonova/AB, to identify the relevant information requested, and to limit any unnecessary disclosure of confidential information. Only after discussion at the highest level of the company was approval provided to disclose the documents and information containing MED-EL's highly confidential financial information at issue here. Decl. at ¶ 12. Disclosure of MED-EL's sensitive financial and business information into the public domain would cause great harm to MED-EL by revealing MED-EL's highly confidential data and trade secrets with its direct competitors and with the public generally. Decl. at ¶ 8. The information MED-EL seeks to protect is precisely the kind of information that courts in this district recognize is appropriate to be sealed in public proceedings.

As courts in this district have recently explained, "Courts have repeatedly protected from disclosure financial data showing pricing, costs, sales revenue, and profits where it could place movants at a competitive disadvantage." *Amgen Inc. v. Amneal Pharms. LLC*, No. 16-853-MSG, 2021 WL 4133516, at *3 (D. Del. Sept. 10, 2021) (citing cases), *opinion vacated in part on reconsideration,* No. 16-853-MSG, 2021 WL 4843959 (D. Del. Oct. 18, 2021) (agreeing to seal additional data spreadsheets upon motion for reconsideration); *Genentech, Inc. v. Amgen, Inc.*, No. 17-1407-CFC, 2020 WL 9432700, at *5 (D. Del. Sept. 2, 2020), *report and recommendation adopted*, No. 17-1407-CFC, 2020 WL 9432702 (D. Del. Oct. 1, 2020) (finding good cause to seal confidential business information in a highly competitive field where even seemingly minor pieces of information can be valuable to competitors); *Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (good cause exists to seal or redact information such as "the pricing terms in license agreements, some other non-public financial information, trade secrets, and other proprietary technology); *see also* Fed. R. Civ. P. 26(c)(1)(G) (identifying "a trade secret or other confidential research, development, or commercial information" as one category of information that can be protected via court order). The Supreme Court has explained that "the common-law right of inspection has bowed before the power of a court to insure that its records" do not "serve as ... sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

MED-EL's proposed redactions are narrow in scope do not hinder the public's understanding of the basis for the relief sought in the Reply Brief in support of the Davis *Daubert* because the substantive subject matter of the motion would remain unredacted. MED-EL seeks to seal the kind of information that courts will protect, and disclosure of the information will cause MED-EL a clearly defined, serious injury.

## V. CONCLUSION

For the foregoing reasons, MED-EL respectfully requests the Court grant the Joint Motion to Seal Exhibits 108 and 109 to the Reply Brief in support of the Daubert motion to exclude the opinions and testimony of Julie L. Davis with respect to MED-EL's highly confidential information.

|  |  |
|---|---|
| OF COUNSEL: | /s/ Frederick L. Cottrell, III<br>Frederick L. Cottrell, III  (#2555)<br>Christine D. Haynes (#4697) |
| Kerry L. Timbers<br>Lisa M. Tittemore<br>Sharona H. Sternberg<br>Sunstein LLP<br>100 High Street<br>Boston, MA 02110<br>(617) 443-9292<br>ktimbers@sunsteinlaw.com<br>ltittemore@sunsteinlaw.com<br>ssternberg@sunsteinlaw.com | Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>haynes@rlf.com<br><br>*Attorneys for Plaintiffs/Counterclaim Defendants* |

Dated:  May 10, 2022