## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H.** *et al.*,<br><br>*Plaintiffs,*<br>v.<br><br>**ADVANCED BIONICS, LLC, et. al,**<br><br>*Defendants.* | Case No. 1:18-cv-01530-JDW |

### ORDER

**AND NOW**, this 12th day of May, 2022, the Court notes as follows.

1. The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, the Court applies Third Circuit law with respect to motions to seal in patent cases.

2. The common law presumes that the public has a right of access to judicial records. *In re Avandia Marketing*, 924 F.3d at 672. "In the Third Circuit, the right is particularly robust." *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding*, No. 19-cv-209, 2020 WL 2949742, at *7 (D. Del. Mar. 25, 2020), *report and recommendation adopted in part*, 2020 WL 2915781 (D. Del. June 3, 2020). "A 'judicial record' is a document that

'has been filed with the court ... or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" *Avandia*, 924 F.3d at 672 (quotation omitted). To overcome the strong presumption of access that attaches to judicial records, a movant must show that an interest in secrecy outweighs the presumption by demonstrating that the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure. *See id.* (emphasis added).

3. A party seeking to file material under seal must make a specific showing; "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quotation omitted). The Court "must 'conduct[ ] a document-by-document review' to determine whether sealing is warranted. *Id.* (same). That standard does not vary depending on the level of public interest in a case or which members of the public might be interested in it. "Things that typically weigh against the necessity of sealing include that the information is … already in the public record[.]" *Delaware Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016)).

Given these standards, it is **ORDERED** that the Parties' Joint Motion To Seal Certain Exhibits To The Declaration In Support Of Advanced Bionics's Opposition To MED-EL's Motion To Exclude Portions Of Dr. Gerald R. Popelka's Opinions (D.I. 280) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. MED-EL's strength, weakness, opportunities, and threats ("SWOT") analysis reflects MED-EL's highly confidential competitive analysis and potential future business plans. This type of analysis is the type of confidential business information that

courts will protect from disclosure. Indeed, "courts may permissibly seal judicial records 'where they are sources of business information that might harm a litigant's competitive standing.'" *Avandia*, 924 F.3d at 679 (quotation omitted).

        b.    In addition, MED-EL has presented evidence that should this information become public and available to MED-EL's rivals in such a competitive market, then those "competitors would be able to make decisions about where, when, and how to offer directly competitive goods with full knowledge of MED-EL's strengths, weaknesses, and future plans." (D.I. 282 at ¶ 7.) As a result, MED-EL would suffer a significant competitive disadvantage.

        c.    Sealing is warranted as to MED-EL's SWOT analysis. However, MED-EL seeks to shield information that is already public, including the fact that both Advanced Bionics and MED-EL market their products' wireless connectivity features. That fact undermines MED-EL's position that this information should be sealed. Thus, the Motion is **DENIED** with respect to the phrase "wireless connectivity is a significant feature marketed by both Advanced Bionics and MED-EL," as set forth in Paragraph 110 of Gerald R. Popelka, Ph.D.'s rebuttal expert report. The motion is otherwise **GRANTED**.

It is **FURTHER ORDERED** that the Parties' Joint Motion To Seal Certain Exhibits To The Declaration In Support Of Advanced Bionics's Opposition To MED-EL's *Daubert* Motion To Exclude Opinions And Testimony Of Dr. Martin Graves (D.I. 286), the Parties' Joint Motion To Seal Certain Exhibits To The Declaration In Support Of Advanced Bionics's Opposition To MED-EL's Motion For Summary Judgment (D.I. 293), and the

Parties' Joint Motion To Seal Exhibit 111 To The Declaration In Support Of MED-EL's Reply Brief In Support Of Its *Daubert* Motion To Exclude Opinions And Testimony Of Dr. Martin Graves (D.I. 335) are **GRANTED** as follows:

      a.    MED-EL has presented evidence that certain highly confidential technical specifications, system descriptions, and non-public documents submitted to the FDA may be trade secrets. Indeed, the confidential information set forth in David Trumper's expert report and MED-EL's internal technical documents "derive[] independent economic value … from not being generally known" to MED-EL's competitors, and MED-EL takes great care to keep this information confidential, even internally. *Elenza, Inc. v. Alcon Lab'ys Holding Corp.*, 183 A.3d 717, 721 (Del. 2018) (defining trade secret) (quotation omitted). Trade secrets and confidential technical information are types of material that courts will protect from disclosure. *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp.2d 503, 511 (D. Del. 2012).

      b.    In addition, MED-EL has presented evidence that should this information become public, MED-EL's rivals would gain "full knowledge of MED-EL's specifications and technical information" in a highly competitive market in which "even seemingly minor information" becomes competitively advantageous. (D.I. 288, 295, 337 at ¶¶ 7, 9.) Those competitors could use that information to MED-EL's significant competitive disadvantage. As such, MED-EL has demonstrated that sealing of this information is warranted.

It is **FURTHER ORDERED** that the Parties' Joint Motion To Seal The Opposition And Certain Exhibits To The Declaration In Support Of Advanced Bionics's Opposition

To MED-EL's Motion To Exclude Opinions And Testimony Of Julie L. Davis (D.I. 299) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    In an Order dated April 18, 2022, the Court determined that Advanced Bionics's highly-confidential, non-public market share data, unit sales, pricing information, profit margins, financial projections, and sales growth information is the type of material that courts shield from public disclosure. In addition, Advanced Bionics has demonstrated that it will suffer specific harm if its confidential financial information becomes public, given the uniquely competitive nature of the cochlear implant market.

    b.    However, some of the information that Advanced Bionics seeks to shield from public view is already available to the public. On December 7, 2021, the Court denied Advanced Bionics's prior Motion to Seal portions of Barry Sussman's damages report, and on December 10, 2021, the Court denied Advanced Bionics's Motion for Reconsideration. As a result, some of Advanced Bionics's financial information has been on the public docket since December 17, 2021, including the information set forth in Exhibit F.2 to Mr. Sussman's report. That fact weighs against sealing. Thus, the Joint Motion is **DENIED** with respect to the redacted portions in the sentences that precede footnotes 378, 380, and 381 in Ms. Davis's rebuttal report, as this information is reflected in Exhibit F.2 to Mr. Sussman's report. The Joint Motion is otherwise **GRANTED**.

It is **FURTHER ORDERED** that the Parties' Joint Motion To Seal The Answering Brief And Certain Exhibits To The Declaration In Support Of MED-EL's Opposition To

Advanced Bionics's *Daubert* Motion To Exclude Expert Opinions Of Barry Sussman (D.I. 312) and the Parties' Joint Motion To Seal Exhibits 108 And 109 To The Declaration In Support Of MED-EL's Reply Brief In Support Of Its *Daubert* Motion To Exclude Opinions And Testimony Of Julie L. Davis (D.I. 330) are **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    In this Joint Motion, MED-EL asks the Court to seal certain confidential financial and licensing information.

    b.    In prior Orders, the Court determined that MED-EL's highly-confidential financial information and data is the type of material that courts shield from public disclosure. In addition, the Court has already permitted MED-EL to redact certain financial information set forth in Mr. Sussman's report, as reflected in D.I. 205-1. Thus, the Motions are **GRANTED** with respect to this information.

    c.    MED-EL has also met its burden with respect to the specific figures set forth on pages 4, 13, and 28 of its Answering Brief In Opposition To Advanced Bionics's *Daubert* Motion To Exclude Expert Opinions Of Barry Sussman (D.I. 307). The sworn declaration from MED-EL's Head of IP sets forth the specific harm that would occur if MED-EL's confidential business and financial information were made available to its competitors in the highly-competitive cochlear implant market. Thus, the Joint Motion is **GRANTED** with respect to this information as well.

    d.    The portions of Mr. Sussman's deposition transcript that MED-EL seeks to seal does not contain actual unit prices or market share percentages. At most, Mr. Sussman testified that MED-EL's unit prices were higher in certain years than others

and opined in general terms about the impact on MED-EL's market share at various times. MED-EL has not met its burden to demonstrate how these non-specific references to unit prices and market share could cause significant competitive harm to MED-EL. As a result, the Joint Motions are **DENIED** with respect to Mr. Sussman's deposition testimony.

e. In addition to financial information, MED-EL asks the Court to seal references relating to a cross-license agreement between MED-EL and a third party. However, MED-EL has not met its burden to demonstrate that the Court should keep this material from public view. Materials that reflect licensing strategies are "the sort of material that courts have frequently redacted." *Mosaid*, 878 F. Supp. 2d at 510. However, the information that MED-EL seeks to shield from public view does not reveal MED-EL's licensing strategies or the contents of any licensing agreement. Instead, MED-EL seeks to redact references to the mere fact that MED-EL has entered into a cross-license agreement with a third party. Sealing is not warranted for at least two reasons.

f. *First*, the fact that MED-EL has a cross-license with a third party has been public since December 17, 2021. Indeed, in a prior Motion to Seal portions of Mr. Sussman's expert report, MED-EL did not ask the Court to redact paragraph 124, which reveals that MED-EL has a cross-license agreement with a third party. (*See* D.I. 201; D.I. 205-1 at ¶ 124.) That the information has been public for many months weighs against sealing.

      g.    *Second*, the fact that MED-EL and a third party have agreed to keep the existence of their license agreement confidential is not sufficient to overcome the presumption in favor of public access to judicial documents. Indeed, the parties' private agreement to maintain confidentiality "does not govern [the Court's] obligation to ensure public access." *Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, No. 15-cv-1059, 2017 WL 11573695, at *3 (D. Del. Aug. 28, 2017) (citation omitted). Thus, the Joint Motion is **DENIED** with respect to this information.

In light of the foregoing, and to the extent necessary, it is **FURTHER ORDERED** that the Parties shall un-redact their respective documents, consistent with the Court's rulings above, and re-file those documents by May 20, 2022.

      **BY THE COURT:**

      */s/ Joshua D. Wolson*
      **HON. JOSHUA D. WOLSON**
      **United States District Judge**