# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED BIONICS, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 18-1530-JDW |
| ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> Counterclaim Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**MED-EL'S BRIEF IN SUPPORT OF JOINT MOTION TO SEAL MED-EL'S SUR-REPLY BRIEF IN OPPOSITION TO ADVANCED BIONICS' *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS OF BARRY SUSSMAN AND EXHIBITS**

OF COUNSEL:

Kerry L. Timbers
Lisa M. Tittemore
Sharona H. Sternberg
Sunstein LLP
100 High Street
Boston, MA 02110
(617) 443-9292

Dated: May 17, 2022

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Plaintiffs/Counterclaim Defendants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND ..................................................1

       A.     Procedural Background ......................................................................................1

       B.     Factual Background ............................................................................................2

III.   LEGAL STANDARD ...................................................................................................3

IV.    ARGUMENT ................................................................................................................4

       A.     Disclosure of MED-EL's Highly Confidential Information in the
              Sur-Reply Brief and Exhibit 113 will cause a clearly defined and
              serious injury to MED-EL. .................................................................................5

              1.     MED-EL's Highly Confidential Competitive Analysis
                     Information in Exhibit 113 must be protected to avoid real
                     and serious harm to MED-EL. ..................................................................5

              2.     MED-EL's highly confidential information on page 10 of
                     the Sur-Reply Brief regarding MED-EL's damages
                     calculations must be protected to avoid real and serious
                     harm to MED-EL ......................................................................................7

       B.     MED-EL's confidential information in the Sur-Reply Brief and
              Exhibit 113 should be protected as it is the type of information that
              courts in the Third Circuit frequently protect. ....................................................7

V.     CONCLUSION .............................................................................................................9

## **TABLE OF AUTHORITIES**

**Cases**                                                                       **Page(s)**

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
  800 F.2d 339 (3d Cir. 1986) ............................................................................................. 4

*Del. Display Grp. LLC v. LG Elecs. Inc.*,
  221 F. Supp. 3d 495 (D. Del. 2016) ................................................................................. 9

*Depomed, Inc. v. Purdue Pharma L.P.*,
  No. 13-571-MLC-TJB, 2017 WL 2840003 (D.N.J. June 29, 2017) .................................. 8

*Genentech, Inc. v. Amgen, Inc.*,
  No. 17-1407-CFC, 2020 WL 9432700, at *5 (D. Del. Sept. 2, 2020) .......................... 4, 8

*GFI, Inc. v. Franklin Corp.*,
  265 F.3d 1268 (Fed. Cir. 2001) ....................................................................................... 3

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  924 F.3d 662 (3d Cir. 2019) ........................................................................................ 3, 4

*In re Cendant Corp.*,
  260 F.3d 183 (3d Cir. 2001) ............................................................................................. 3

*Littlejohn v. Bic Corp.*,
  851 F.2d 673 (3d Cir. 1988) ............................................................................................. 3

*Miller v. Ind. Hosp.*,
  16 F.3d 549 (3d Cir. 1994) ............................................................................................... 4

*Mosaid Techs. Inc. v. LSI Corp.*,
  878 F. Supp. 2d 503 (D. Del. 2012) ................................................................................. 4

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ......................................................................................................... 9

*Osteotech, Inc. v. Regeneration Techs.*, Inc.,
  No. 06-4249 (FLW), 2009 WL 10728726 (D.N.J. Jan. 21, 2009) .................................... 8

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) .................................................................................................... 9

I.   INTRODUCTION

Plaintiffs and Counterclaim Defendants MED-EL Elektromedizinische Geräte Ges.m.b.H. and MED-EL Corporation, USA's (collectively, "MED-EL") respectfully request the Court to seal highly confidential information contained in the MED-EL's Sur-Reply Brief in Opposition to Advanced Bionics' *Daubert* Motion to Exclude Expert Opinions of Barry Sussman (Sur-Reply Brief) and a certain accompanying exhibit (Exhibit 113), consistent with the Court's earlier decisions regarding sealing the same or similar information. *See* D.I. 274, 342.

MED-EL's highly confidential information contained in the Sur-Reply Brief and Exhibit 113 must be maintained under seal in order to prevent serious and real harm to MED-EL. Release of MED-EL's highly confidential information contained in the Sur-Reply Brief and Exhibit 113 to the public and MED-EL's business competitors would create a clearly defined and serious injury to MED-EL, as discussed in detail below. MED-EL respectfully requests that the Court maintain specific portions of the Sur-Reply Brief and Exhibit 113 under seal, including specific portions of sentences on page 10 of the Sur-Reply Brief, and specific information from Exhibit 113 (MED-EL Internal Travel Session Report).

II.   PROCEDURAL AND FACTUAL BACKGROUND

A.   Procedural Background

On October 3, 2018, MED-EL filed its complaint against Sonova/AB, asserting the Zimmerling '057 and Zimmerling '909 patents. On November 28, 2018, Sonova/AB filed counterclaims, asserting the Schmid '681, Faltys '747, Overstreet '308, and Crawford '647 patents. On October 8, 2019, Sonova/AB amended its counterclaims to assert the Maltan '746 and Karamuk '847 Patents. Pursuant to the Court's Order of July 30, 2021 (D.I. 157), all claims concerning the Schmid '681, Karamuk '847, and Maltan '746 patents have been stayed since the

close of fact discovery.[1] The parties completed expert discovery on the patents that were not stayed, and pursuant to the Court's order of April 4, 2022, summary judgment and *Daubert* motions were filed on April 7, 2022, answering briefs in opposition were filed on April 29, 2022, reply briefs were filed on May 10, 2022, and sur-reply briefs are due on or before May 17, 2022.

During the parties' meet and confer, the parties agreed to file a joint motion to seal the Sur-Reply Brief and Exhibits 113 and 114 and to file individual briefs in support of the motion with respect to each parties' own highly confidential information.

### B.  Factual Background

MED-EL manufactures and sells cochlear implant systems in the hotly competitive cochlear implant industry. Decl. at ¶ 8.[2] There are three major cochlear implant manufacturers worldwide – MED-EL, Sonova/AB, and Cochlear Limited – as well as some newer entrants to the marketplace (for example, Nurotron). *Id.* Because there are so few competitors in the cochlear implant marketplace, the market is highly competitive. *Id.*

MED-EL is a small company by comparison to its (current) primary competitors, Sonova/AB and Cochlear. Decl. at ¶ 9. One of the advantages that MED-EL has over its competitors is its status as a privately held company. *Id.* As a privately held company, MED-EL does not publish its financial information, which is maintained as highly confidential and shared internally at MED-EL with only limited employees on a strictly and carefully maintained need-to-know basis. *Id.*

---

[1] Pursuant to subsequent IPR decisions by the PTAB, the Maltan '746, Karamuk '847, Schmid '681, and all but claim 3 of the Faltys '747 patent, are invalid. The deadline for appeal regarding Maltan '746 and Karamuk '847 is June 2, 2022, an appeal regarding Schmid '681 is pending at the Federal Circuit, and no appeal was filed regarding Faltys '747.

[2] Citations to "Decl." refer to the Declaration of Mario Konegger in Support of MED-EL's Brief in Support of Joint Motion to Seal MED-EL's Sur-Reply Brief in Opposition to Advanced Bionics' *Daubert* Motion to Exclude Expert Opinions of Barry Sussman and Exhibits.

Unlike in other industries, the participants in the cochlear implant industry do not provide financial data to independent, third-party data analytics organizations for use in publishing analysis or reports on the cochlear implant market. Decl. at ¶ 10. While third parties compile, analyze, and publish data regarding the hearing industry in general, the data does *not* extend to the cochlear implant industry. *Id.* Thus, MED-EL and its competitors in the cochlear implant industry do not share or publish financial or competitive business information of the type contained in the Sur-Reply Brief and Exhibit 113 (an exception is the extent to which Sonova/AB and Cochlear Limited are required to make mandatory disclosures as public companies).

MED-EL takes extensive steps – even strictly limiting access within MED-EL – to maintain its financial information and competitive business information as strictly confidential. Further, MED-EL has taken extreme care during this litigation to protect the confidentiality of this information. MED-EL provides the Declaration of Mario Konegger in support of its requests herein.

### III. LEGAL STANDARD

The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues. The issues raised by the instant motion to seal thus should be decided pursuant to Third Circuit law. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001).

Third Circuit common law presumes that the public has a right of access to judicial records, but also protects business records when access would cause economic harm, e.g., competitive harm. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that the right is not absolute." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (citations and quotations omitted); *see also Littlejohn v.*

*Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("Despite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing").

A movant overcomes the presumption of access by showing "that the interest in secrecy outweighs the presumption." *In re Avandia Mktg.*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). A movant may make this showing by demonstrating that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking protection. *See In re Avandia Mktg.*, 924 F.3d at 672 (citing *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). The Court applies a "good cause" standard to justify sealing or redacting judicial records, which requires a "balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public.") *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507–08 (D. Del. 2012).

### IV.    ARGUMENT

Good cause exists to seal portions of the Sur-Reply Brief and Exhibit 113 that contain MED-EL's highly confidential financial and competitive business information, as disclosure of such information would cause real and serious competitive harm to MED-EL. This Court has found good cause to redact "confidential financial information," which "could cause real and serious harm" if disclosed, and is "the sort of material that courts have frequently redacted." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012); *Genentech, Inc. v. Amgen, Inc.*, No. 17-1407-CFC, 2020 WL 9432700, at *5 (D. Del. Sept. 2, 2020), *report and recommendation adopted*, No. 17-1407-CFC, 2020 WL 9432702 (D. Del. Oct. 1, 2020) (finding good cause to seal confidential business information in a highly competitive field where even seemingly minor pieces of information can be valuable to competitors).

The Sur-Reply Brief and Exhibit 113 contain highly sensitive, non-public financial and competitive business information belonging to MED-EL. MED-EL seeks to protect only the specific, limited, highly confidential information relating to MED-EL's unit sales, revenue, average selling price, costs, inventory, margins, sales growth, market share, market penetration, damages calculations, and licensing strategies.

In order to protect this information, MED-EL proposes to provide the Court with a redacted version of the Sur-Reply Brief and Exhibit 113, redacting only the material specifically identified below. MED-EL's proposed redactions are narrow in scope and refer only to MED-EL's confidential, sensitive financial or business information in order to prevent the serious harm to MED-EL which would be caused by its public release.

**A.     Disclosure of MED-EL's Highly Confidential Information in the Sur-Reply Brief and Exhibit 113 will cause a clearly defined and serious injury to MED-EL.**

Public disclosure of MED-EL's highly confidential information will cause MED-EL present and future commercial and competitive harm by supplying MED-EL's competitors with information regarding at least MED-EL's financial health, perceived strengths and weaknesses, and competitive strategies. MED-EL's competitors would gain significant advantage in creating their own business strategies, which would put MED-EL at a significant competitive disadvantage, causing it real and serious harm. Decl. at ¶ 13.

**1.     MED-EL's Highly Confidential Competitive Analysis Information in Exhibit 113 must be protected to avoid real and serious harm to MED-EL.**

Pages 1 and 2 of Exhibit 113 reference and summarize MED-EL's highly confidential competitive analysis based on information gathered in the field in 2018. Decl. at ¶ 14. Specifically, Exhibit 113 reflects the internal notes of Raymond Gamble, CEO of MED-EL USA, relating to conversations with specific surgeons and/or audiologists from specific medical centers regarding

5

the reasons why they and/or their patients choose to purchase products offered by one cochlear implant manufacturer over another. Decl. at ¶ 14. MED-EL invests significant resources in developing and maintaining relationships with key opinion leaders in the field, including surgeons, audiologists, and other decision-makers at various healthcare centers, and the competitive information MED-EL learns through these relationships directly informs MED-EL's highly confidential business strategies. Decl. at ¶ 15.

Public disclosure of MED-EL's highly confidential competitive business information, including its research on market response to competitors' products, will cause MED-EL present and future commercial and competitive harm by supplying MED-EL's competitors and customers with information regarding at least MED-EL's perceived strengths, weaknesses, and understanding of the market. Competitors would gain significant advantage in creating their own messaging and business strategies, which would put MED-EL at a significant competitive disadvantage, causing it real and serious harm. Decl. at ¶ 13.

Public access or disclosure of MED-EL's analysis of its customer base would allow MED-EL's competitors to understand MED-EL's market focus, which would allow MED-EL's competitors to use MED-EL's data to develop targeted marketing campaigns for their own competing products in markets where their own market estimates may not have indicated opportunity and to make strategic decisions regarding which markets to target based on MED-EL's confidential information, which would cause harm to MED-EL. Decl. at ¶ 16.

MED-EL's proposed redactions are narrow in scope and refer only to MED-EL's confidential, competitive business information. The proposed redactions do not hinder the public's understanding of the basis for relief sought in the Sur-Reply Brief because the subject matter of the brief would remain public.

**2. MED-EL's highly confidential information on page 10 of the Sur-Reply Brief regarding MED-EL's damages calculations must be protected to avoid real and serious harm to MED-EL.**

MED-EL proposes to redact specific numerical values from certain sentences on page 10 of the Sur-Reply Brief, which relate to MED-EL's damages calculations. Decl. at ¶ 17.

Public access to information MED-EL's damages calculations, including MED-EL's calculated reasonable royalty rate, will cause MED-EL significant harm. Decl. at ¶ 18. For example, MED-EL's competitors could use their understanding of the cochlear implant marketplace and of their own unit selling prices to backwards engineer MED-EL's sales figures. *Id.* Additionally, such disclosure would provide competitors, such as Cochlear, one of MED-EL's major competitors, and others, to know how MED-EL is being harmed by Sonova/AB's infringement, which would provide competitors with an unfair advantage over MED-EL. *Id.*

MED-EL's proposed redactions to page 10 of the Sur-Reply Brief are narrow in scope and refer only to MED-EL's confidential damages calculation information. Specifically, MED-EL proposes to redact only the precise numerical data. The proposed redactions do not hinder the public's understanding of the basis for relief sought in the Sur-Reply Brief because the substantive subject matter of the brief would remain unredacted.

**B. MED-EL's confidential information in the Sur-Reply Brief and Exhibit 113 should be protected, as it is the type of information that courts in the Third Circuit frequently protect.**

The information contained in the Sur-Reply Brief and Exhibit 113 contains highly sensitive, non-public competitive business information belonging to MED-EL that is not known to competitors or to the general public. To date, this information has only been shared as CONFIDENTIAL - ATTORNEYS' EYES ONLY under the protective order, and can only be seen by the parties' outside counsel and experts. Decl. at ¶ 12. MED-EL and its counsel have taken

7

strict and careful measures to maintain this information as confidential through the litigation of this dispute.

For example, in response to each request by Sonova/AB for documents or information relating to MED-EL's financial data or competitive business information, MED-EL specifically consulted with counsel and with Mr. Sussman to understand the legal requirements of providing information to counsel for Sonova/AB, to identify the relevant information requested, and to limit any unnecessary disclosure of confidential information. Only after discussion at the highest level of the company was approval provided to disclose the documents and information containing MED-EL's highly confidential financial information at issue here. Decl. at ¶ 11. Disclosure of MED-EL's sensitive financial and business information into the public domain would cause great harm to MED-EL by revealing MED-EL's highly confidential data and trade secrets with its direct competitors and with the public generally. Decl. at ¶ 7. The information MED-EL seeks to protect is precisely the kind of information that courts in this district recognize is appropriate to be sealed in public proceedings.

Courts in this circuit routinely protect from disclosure highly confidential competitive analyses. *See Osteotech, Inc. v. Regeneration Techs*., Inc., No. 06-4249 (FLW), 2009 WL 10728726, at *2 (D.N.J. Jan. 21, 2009) (granting motion to seal to protect a party's "confidential technical and business information"); *Depomed, Inc. v. Purdue Pharma L.P.,* No. 13-571-MLC-TJB, 2017 WL 2840003, at *2 (D.N.J. June 29, 2017) (finding that patent plaintiff "has a legitimate interest in maintaining the confidentiality of its commercial strategies, as well as information relevant to research, development, technical and supplier information"); *Genentech, Inc.*, 2020 WL 9432700, at *5 (D. Del. Sept. 2, 2020) (finding good cause to seal confidential business information in a highly competitive field where even seemingly minor pieces of

8

information can be valuable to competitors); *Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (good cause exists to seal or redact information such as "the pricing terms in license agreements, some other non-public financial information, trade secrets, and other proprietary technology); *see also* Fed. R. Civ. P. 26(c)(1)(G) (identifying "a trade secret or other confidential research, development, or commercial information" as one category of information that can be protected via court order). The Supreme Court has explained that "the common-law right of inspection has bowed before the power of a court to insure that its records" do not "serve as ... sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

MED-EL's proposed redactions are narrow in scope do not hinder the public's understanding of the basis for the relief sought in the Sur-Reply Brief because the substantive subject matter of the brief would remain unredacted. MED-EL seeks to seal the kind of information that courts will protect, and disclosure of the information will cause MED-EL a clearly defined, serious injury.

**V.     CONCLUSION**

For the foregoing reasons, MED-EL respectfully requests the Court grant the Joint Motion to Seal the Sur-Reply Brief and Certain Exhibits with respect to MED-EL's highly confidential information.

|  |  |
|---|---|
| OF COUNSEL: | /s/ *Frederick L. Cottrell, III* |
|  | Frederick L. Cottrell, III  (#2555) |
|  | Christine D. Haynes (#4697) |
| Kerry L. Timbers | Richards, Layton & Finger, P.A. |
| Lisa M. Tittemore | 920 North King Street |
| Sharona H. Sternberg | Wilmington, DE 19801 |
| Sunstein LLP | (302) 651-7700 |
| 100 High Street | cottrell@rlf.com |
| Boston, MA 02110 | haynes@rlf.com |
| (617) 443-9292 |  |
|  | *Attorneys for Plaintiffs/Counterclaim Defendants* |

Dated:  May 17, 2022