IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br><br>*Plaintiff*,<br><br>v.<br><br>ADVANCED BIONICS, LLC,<br><br>*Defendant*.<br><br>ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG,<br><br>*Counterclaim Plaintiffs*,<br><br>v.<br><br>MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br><br>*Counterclaim Defendants*. | C.A. No. 18-1530-JDW |

**ADVANCED BIONICS' BRIEF IN SUPPORT OF ITS MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

**Page**

AB MOTION *IN LIMINE* #1: Preclude MED-EL From Offering A New Prior Use Invalidity Defense Regarding The '308 Patent and New Fact Witnesses To Support This New Defense ................................................................................................. 1

AB MOTION *IN LIMINE* #2: Preclude MED-EL From Arguing Undisclosed Obviousness Combinations Invalidate The Asserted '647 Patent Claims ........................ 10

AB MOTION *IN LIMINE* #3: Preclude MED-EL From Referring To Irrelevant Product Recall Or Reliability Issues ............................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*,
   111 F. App'x 582 (Fed. Cir. 2004)..................................................................................3

*Chore–Time Equip. Inc. v. Cumberland Corp.*,
   713 F.2d 774 (Fed. Cir. 1983).........................................................................................5

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
   No. 07-cv-3770-DMC, 2010 WL 1849913 (D.N.J. May 7, 2010) ..................................7

*Ely v. Cabot Oil & Gas Corp.*,
   No. 3:09-cv-2284, 2016 WL 590370 (M.D. Pa. Feb. 12, 2016).....................................9

*HVLPO2, LLC v. Oxygen Frog, LLC*,
   949 F.3d 685 (Fed. Cir. 2020).............................................................................3, 4, 13

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   472 F. Supp. 2d 604 (D. Del. 2007).........................................................................3, 12

*Johnson v. Vanguard Mfg., Inc.*,
   34 F. App'x 858 (3d Cir. 2002).................................................................................3, 12

*Joyal Prod., Inc. v. Johnson Elec. N. Am., Inc.*,
   No. 04-cv-5172 (JAP), 2008 WL 4630500 (D.N.J. Oct. 17, 2008).................................6

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004)...................................................................................3, 4

*Konstantopoulos v. Westvaco Corp.*,
   112 F.3d 710 (3d Cir. 1997)............................................................................................8

*LG Display Co., Ltd. v. AU Optronics Corp.*,
   265 F.R.D. 199 (D. Del. 2010) .....................................................................................12

*Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*,
   No. 99-cv-3121 (WHW), 2008 WL 4378294 (D.N.J. Sept. 23, 2008)...........................9

*Prima Tek II, LLC v. Polypap, SARL*,
   412 F.3d 1284 (Fed. Cir. 2005).......................................................................................5

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
   536 F.3d 1256 (Fed. Cir. 2008)...................................................................................4, 6

**Page(s)**

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
　550 F.3d 1356 (Fed. Cir. 2008)...................................................................................................3

*Superior Consulting Servs., Inc. v. Shaklee Corp.*,
　No. 6:16-cv-2001-ORL-31GJK, 2018 WL 1474184 (M.D. Fla. Mar. 7, 2018) ........................7

*SZ DJI Tech Co., Ltd. V. Autel Robots USA LLC*,
　No. 16-cv-706-LPS, D.I. 600 (D. Del. Aug. 4, 2021)................................................................7

*Union Carbide Corp. v. American Can Co.*,
　724 F.2d 1567 (Fed. Cir. 1984)..................................................................................................5

**Rules**

Fed. R. Civ. P. 26........................................................................................................................6, 7

Fed. R. Civ. P. 26(a) ............................................................................................................ *passim*

Fed. R. Civ. P. 37(c)(1).....................................................................................................4, 8, 12

Fed. R. Evid. 403 .........................................................................................................................14

## AB MOTION *IN LIMINE* #1: Preclude MED-EL From Offering A New Prior Use Invalidity Defense Regarding The '308 Patent and New Fact Witnesses To Support This New Defense

MED-EL should be precluded from arguing a new invalidity defense that has no expert support and that MED-EL apparently hopes to present via "evidence" and fact witness testimony for which no proper notice was provided. In particular, MED-EL has recently indicated it seeks to present a "prior use" invalidity defense against AB's asserted U.S. Patent No. 7,076,308 ("the '308 Patent") despite the fact that (1) MED-EL served no expert report at all on invalidity issues for this patent, and thus has no legally-viable means by which it can map any alleged prior art to the asserted claims, and (2) the fact witnesses that MED-EL now identifies as expected to offer lay witness testimony to support this defense were never identified as having such knowledge about alleged prior public use in MED-EL's initial disclosures or discovery. The Court should reject MED-EL's belated effort to present this newly-contrived invalidity argument, and at the very least prevent MED-EL fact witnesses from presenting testimony on issues for which they were never disclosed.

MED-EL proffered no expert opinion evidence on this prior use anticipation defense. Indeed, MED-EL did not serve any reports under FRCP 26(a)(2) from any expert—retained or unretained—opining that the asserted claims of the '308 Patent were invalid for any reason. In the course of preparing the pretrial order in this case, MED-EL disclosed (to AB's surprise) its intent to argue at trial that the claims of the '308 Patent were invalid based on alleged evidence that the asserted claims were "known or in public use in the United States before the Overstreet '308 invention and more than one year prior to the date of the Overstreet '308 application." D.I. 389, ¶ 58; *see also id.*,¶ 114. In the pretrial order exchanges the last month, MED-EL identified two MED-EL employees—Darla Franz and Kristen Avitabile—as lay witnesses who will allegedly provide evidence in support of this invalidity argument. D.I. 389, ¶¶ 161-62.

{01944120;v1 }

1

Yet MED-EL never identified Ms. Franz or Ms. Avitabile as having knowledge of the alleged prior public use of the '308 Patent in its initial disclosures or discovery. MED-EL never identified Ms. Avitabile in its initial disclosures at all. Ex. 3. MED-EL did identify Ms. Franz, but characterized her relevant knowledge in terms of the accused products and not any invalidity defense: "the operation of and materials used to train, instruct, educate, or support physicians in using each of MED-EL's *accused* products, systems and processes." *Id*. at 4. MED-EL's interrogatory responses further identified Ms. Franz and Ms. Avitabile as having knowledge of the operations of MED-EL's accused products available *since 2012*, but not any prior use or invalidity evidence (that necessarily must date back to 2004). Ex. 4 at 17.

## I. The Court Should Preclude MED-EL From Presenting At Trial Its Newly Disclosed Invalidity Defense For The '308 Patent

This Court should preclude MED-EL from offering any testimony, evidence, or argument that the asserted claims of the '308 Patent are invalid because MED-EL failed to disclose any expert opinion or any other viable evidence in support of such a claim.

"[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). This disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case" or, in the case of an unretained expert, disclose the "subject matter on which the witness is expected to testify" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(B)-(C). If no expert disclosure is made, a witness is not permitted to testify to any expert opinions. *Johnson v. Vanguard Mfg., Inc.*, 34 F. App'x 858, 859 (3d Cir. 2002) (concluding that trial court did not abuse its discretion in excluding parts of plaintiff's expert's testimony "since it was not provided in his expert report as required by Fed. R. Civ. P.

26(a)(2)(B)"); *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 614-15 (D. Del. 2007) (granting motion to exclude an opinion that was not disclosed in an expert report).

Invalidity testimony must come from one skilled in the art and "identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004). A "witness not qualified in the pertinent art may not testify as an expert as to anticipation, or any of [its] underlying technical questions, such as the nature of the claimed invention, what a prior art reference[] discloses, or whether the asserted claims read on the prior art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008). Nor can such a witness testify on "obviousness" or any of its "underlying technical questions." *Id.* at 1363 ("[I]t is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art."); *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 687, 690 (Fed. Cir. 2020) (reiterating that a "district court abuse[s] its discretion by admitting lay witness testimony regarding obviousness" or invalidity); *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 588 (Fed. Cir. 2004) (holding court erred in granting summary judgment of invalidity "without expert testimony clearly explaining how each claim element is disclosed in the" prior art because "[t]he party asserting invalidity has the burden of introducing such evidence, but here [the alleged infringer] offered no such expert testimony").

To invalidate the asserted claims of the '308 Patent, MED-EL must provide testimony ***from an expert*** comparing how a POSA would have interpreted each claim limitation, and explaining why a prior art reference or system disclosed each claim limitation. *Koito*, 381 F.3d at 1152. But MED-EL never disclosed ***any*** expert (retained or unretained) as having opinions concerning the

validity of the '308 Patent. *See, e.g.*, Ex. 9 at 65:13-16 (admitting "I am not offering any opinion whether any claim of the Overstreet patent is invalid"). Absent such expert testimony, MED-EL must be precluded from arguing at trial that the claims of the '308 Patent are invalid.

Having failed to provide any expert disclosure supporting its invalidity theory during expert discovery, MED-EL will apparently attempt to cobble together a strategy of relying on lay witness testimony from Ms. Franz and Ms. Avitabile to provide the necessary evidentiary support for its prior use defense. But MED-EL never disclosed Ms. Franz or Ms. Avitabile as experts, nor provided any summary of their opinions or the facts on which their opinions rest, as MED-EL was required to do if it intended to offer these witnesses as experts. Fed. R. Civ. P. 26(a)(2). Lacking such a disclosure, Ms. Franz or Ms. Avitabile cannot be permitted to offer expert opinions on the validity of the '308 Patent at trial. *HVLPO2*, 949 F.3d at 690 (reiterating that a "district court abuse[s] its discretion by admitting lay witness testimony regarding obviousness" or invalidity); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion."); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (no abuse of discretion to limit testimony of two fact witnesses on invalidity and thereafter granting JMOL of no invalidity).

MED-EL may try to argue that lay witness testimony from Ms. Franz or Ms. Avitabile could be sufficient to establish invalidity because the Federal Circuit in very rare circumstances has found expert testimony unnecessary in cases involving technology simple enough for a lay person to fully understand. *See, e.g. Prima Tek II, LLC v. Polypap, SARL*, 412 F.3d 1284 (Fed. Cir. 2005) (involving "an assembly and method" to display flowers); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567 (Fed.Cir.1984) (plastic bag dispenser); *Chore–Time Equip. Inc.*

*v. Cumberland Corp.*, 713 F.2d 774 (Fed.Cir.1983) (poultry feeder). But this is not that rare case—not even close. Indeed, MED-EL repeatedly has argued to this Court that the technologies at issue in this litigation are "complex" and require "expertise needed to evaluate." D.I. 140 at 4-5 (arguing there are "vastly different types of expertise needed to evaluate each patent"); D.I. 144 at 5 (arguing that separate trials would be necessary due to the "complexity of the technologies" at issue). MED-EL cannot be permitted to flip-flop to contend that this "complex" case is now so simple as to excuse the normal requirement for expert testimony.

The parties agree that a person of ordinary skill in the art ("POSA") for the '308 Patent "would have the equivalent of [at least] a Bachelor's degree in audiology or an engineering discipline such as biomedical engineering, electrical engineering, or mechanical engineering, or a related field" and "would also have two to three years of experience designing, developing, programming, evaluating, or fitting cochlear implant systems." Ex. 7, ¶ 39; Ex. 8, ¶ 41 (opining "person of ordinary skill in the art … would have had, as of August 2001, the equivalent of a Master of Arts or Science degree in audiology or a related discipline and two or three years" of technical experience). To address MED-EL's ***infringement*** of the '308 Patent, AB and MED-EL both rely on professors with doctoral degrees and extensive experience in the field. AB relies on Dr. Gerald Popelka, a Professor of Otolaryngology in the School of Medicine at Stanford University with a Ph.D. in Communication Sciences with a neuroscience emphasis and extensive work experience in the field of audiology. Ex. 7, ¶¶ 7-20. MED-El, in turn, relies on Dr. Douglas Sladen, a Professor at Western Washington University with a Ph.D. in Hearing and Speech Sciences. Ex. 8, ¶¶ 3-16. It follows that the technology at issue here here is "sufficiently complex to fall beyond the grasp of an ordinary layperson" and MED-EL must introduce expert testimony to support any alleged invalidity case. *Proveris*, 536 F.3d at 1267; *Joyal Prod., Inc. v. Johnson*

*Elec. N. Am., Inc.*, No. 04-cv-5172 (JAP), 2008 WL 4630500, at *3 (D.N.J. Oct. 17, 2008) (rejecting argument that invalidity of "commutator fusing technology" could be presented through lay witness testimony). Lacking any such properly disclosed expert opinions to support its invalidity defenses, MED-EL should be preclude from offering any evidence, argument, or testimony that the claims of the '308 Patent are invalid.

## II. The Court Should At The Very Least Exclude Undisclosed Fact Witness Testimony Regarding Alleged Prior Use

Even if the Court were to permit MED-EL to argue invalidity of the '308 Patent without any supporting expert testimony (and it should not), the Court should preclude MED-EL from offering any testimony from Ms. Franz or Ms. Avitabile that "the method accused of infringement of Overstreet '308 was known or in public use in the United States before the Overstreet '308 invention and more than one year prior to the date of the Overstreet '308 application" (D.I. 389, ¶ 58) because MED-EL failed to disclose these witnesses as having knowledge of that subject during fact discovery.

Ms. Avitabile was never identified on any Rule 26 disclosure *at all*. *See generally* Ex. 3. And Ms. Franz was identified on MED-EL's initial disclosures as having "discoverable information concerning the operation of and materials used to train, instruct, educate, or support physicians in using each of MED-EL's ***accused products***, systems, and processes." *Id.* at 4. Offering testimony about alleged ***prior use*** is of course very different than testimony about MED-EL's accused products.

MED-EL has attempted to justify presenting testimony from these witnesses about alleged prior public use at trial because, according to MED-EL, it identified these witnesses in response to certain of AB's Interrogatories. But the only interrogatory identified by MED-EL sought information about "MED-EL's MAESTRO software that has been available since ***2012***." Ex. 4 at

{01944120;v1 }

6

16. MAESTRO is the product accused of infringing the '308 Patent, and AB's interrogatory sought information about the operation of that product *after 2012*. The interrogatory relied on by MED-EL had nothing to do *invalidity* or some prior public use before the *2004 priority date* of the '308 Patent. *Id.* MED-EL's response "does not show that [it] intended to use such witnesses or the subjects to which they may be used," and thus does not satisfy Rule 26. *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-ORL-31GJK, 2018 WL 1474184, at *5 (M.D. Fla. Mar. 7, 2018).

Even if MED-EL actually believes that its response created some inference concerning Ms. Avitabile and Ms. Franz possibly testifying on invalidity—to be clear, there is no such inference to be drawn—"[a]lleged 'disclosures' during discovery that are not facially apparent and require the drawing of further 'inferences' are insufficient to meet the requirements of Rule 26." *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-cv-3770-DMC, 2010 WL 1849913, at *4 (D.N.J. May 7, 2010). Neither witness was ever identified as having information concerning invalidity, much less some supposed prior public use allegedly invalidating the claims of the '308 Patent. Thus, "[e]xclusion is appropriate because these witnesses were not timely disclosed," and AB "would be surprised and unfairly prejudiced by hearing [this] testimony for the first time at trial." *SZ DJI Tech Co., Ltd. V. Autel Robots USA LLC*, No. 16-cv-706-LPS, D.I. 600 at 1-2 (D. Del. Aug. 4, 2021).

To the extent MED-EL attempts to rely on its invalidity contentions as disclosing Ms. Franz and Ms. Avitabile as supporting this theory, that too fails. Nowhere in MED-EL's contentions are Ms. Franz or Ms. Avitabile identified as having alleged knowledge of this alleged prior public use, nor do those contentions identify any evidence sufficient to put AB on notice of MED-EL's intent to support this theory through the lay witness testimony of these two witnesses. Indeed, MED-

EL's only potential reference to this defense in its invalidity contentions consists of a single sentence, repeated twice, and a few extraneous citations with no specificity. Ex. 2 at 11-12; Ex. 2, Ex. D at 4. That is hardly sufficient to put AB on notice that MED-EL intended to rely on Ms. Franz and Ms. Avitabile as lay witnesses in support of its prior public use invalidity theory that it now seeks to pursue at trial.

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless. These factors are: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *See, e.g., Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997).

Here, the first three factors—prejudice, inability to cure the prejudice, and potential trial disruption—are all rooted in the same issue: MED-EL's decision to delay identifying its intent to present this theory and its alleged supporting witnesses until the eve of trial. Fact and expert discovery have long passed and there is no plausible way to turn back the clock. AB cannot now serve further interrogatories and production requests; it cannot depose these late disclosed fact witnesses about their knowledge of the alleged prior public use; it cannot serve supplemental expert reports addressing these invalidity theories; and it cannot file any appropriate dispositive

motions concerning these theories.¹  AB would have to rebut MED-EL's new theories on the fly at trial, and the trial would quickly devolve into something that looks like discovery, right in front of the jury.  Permitting MED-EL to unveil this theory for the first time at trial would be contrary to the entire purpose of the discovery disclosures mandated by the Federal Rules.

As to the fourth and fifth factors, while AB is loath to impute bad faith, MED-EL has offered no explanation for its untimely disclosure and the only logical conclusion is that MED-EL engaged in a "[s]trategic manipulation of the discovery process" that supports a finding of bad faith.  *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-cv-3121 (WHW), 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008) (excluding untimely expert from testifying at trial and finding there was bad faith because the disclosing party "failed to offer any reasonable explanation for its failure to disclose" so "the Court [was] left to conclude that its failure to disclose was strategic.").  As to the importance of this evidence, to the extent MED-EL argues its new '308 Patent invalidity theory is important, that only underscores the prejudice to AB.  Regardless, MED-EL can still argue that it is not liable for infringement because it does not infringe the claims of the '308 Patent.  With no time left to cure the prejudice from MED-EL's failure, exclusion is the only appropriate remedy here.  *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-cv-2284, 2016 WL 590370, at *11 (M.D. Pa. Feb. 12, 2016) (excluding "exhibits and evidence for use at trial [disclosed] for the first time weeks before trial").

---

¹ MED-EL may argue that AB should have moved for summary judgment of no invalidity. However, at the time of summary judgment, MED-EL had not disclosed any intent to pursue any invalidity theory for the '308 Patent.  Requiring a party to file a motion of no invalidity for every invalidity theory disclosed in invalidity contentions but not supported by expert testimony would result in courts being overwhelmed with unnecessary motions.

### AB MOTION *IN LIMINE* #2: Preclude MED-EL From Arguing Undisclosed Obviousness Combinations Invalidate The Asserted '647 Patent Claims

AB also seeks to preclude MED-EL from presenting a new obviousness combination against the other AB asserted patent, U.S. Patent No. 8,270,647 ("the '647 Patent"). AB asserts that MED-EL infringes claims 16, 19, and 21 of the '647 Patent ("the Asserted '647 Claims"). MED-EL's expert, Dr. Amos Winter, opined that the combination of two prior art references—"Van Der Borght and Hochmair '834"—allegedly rendered obvious the Asserted '647 Claims. Ex. 6, ¶¶ 116-129.

But for the first time during pretrial exchanges, MED-EL indicated it intended to argue at trial that the Asserted Claims of the '647 Patent were "invalid as obvious based on … Van Der Borght, Hochmair '834, and Mann '006, including in view of MED-EL's TEMPO+ product." D.I. 389, ¶ 59. Dr. Winter's report contains only a cursory reference to the TEMPO+ system in the background, noting that it is "a cochlear implant system that uses a modular design." Ex. 6, ¶ 42. Dr. Winter's report did not otherwise mention the TEMPO+ system, and it never provided any invalidity analysis based on the TEMPO+ system. Dr. Winter's report also relied on U.S. Patent No. 5,948,006 to Mann, et al. ("Mann '006") with reference to claim 8, however the report failed to provide any invalidity analysis relying on Mann '006 for claims 16, 19 and 21, which are the only asserted claims of the '647 Patent that will be at issue in the upcoming trial. Ex. 6, ¶¶ 109-129. Indeed, Dr. Winter *explicitly* distinguished his combination of "Van Der Borght and Hochmair '834" as allegedly invalidating "claims 7, 9-11, 16, 19, and 21" of the '647 Patent, from the combination of those two references with "Mann '006 or Bauer" as allegedly rendering obvious claim 8 of the '647 Patent. Ex. 6, ¶ 130.

MED-EL should be precluded from offering any testimony, argument, or evidence that the Asserted Claims of the '647 Patent were rendered obvious by the combination of "Van Der Borght,

Hochmair '834, and Mann '006, including in view of MED-EL's TEMPO+ product." D.I. 389, ¶ 59. MED-EL's invalidity expert, Dr. Winter, ***never*** disclosed any opinion that these claims were invalid based on this combination. Ex. 6, ¶¶ 130. If a party seeks to introduce expert testimony at trial from a retained expert, the Federal Rules require disclosure "of a written report" that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Courts routinely prevent experts from testifying to opinions not expressed in his or her expert report. *E.g. Johnson*, 34 F. App'x at 859 (concluding that trial court did not abuse its discretion in excluding parts of plaintiff's expert's testimony "since it was not provided in his expert report as required by Fed. R. Civ. P. 26(a)(2)(B)"); *Inline Connection,* 472 F. Supp. 2d at 614-15 (granting motion to exclude an opinion that was not disclosed in an expert report); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). As Dr. Winter's report lacks any opinion that the combination of Van Der Borght, Hochmair '834, Mann '006 or MED-EL's TEMPO+ product invalidate the Asserted Claims of the '647 Patent, the Court should preclude MED-EL from offering any testimony, argument, or evidence concerning the same.

      MED-EL may argue that Dr. Winter is permitted to offer this opinion because he identified the Mann '006 Patent and TEMPO+ Product in his report. But simply identifying the reference in passing in the background is insufficient to disclose the specific combination that MED-EL now seeks to rely on at trial. *LG Display Co., Ltd. v. AU Optronics Corp.*, 265 F.R.D. 199, 204 (D. Del. 2010) (refusing to permit testimony from an expert about an invalidity reference identified in the expert's report as only relevant to patent claims no longer asserted at the trial). The only time

Dr. Winter's identified the TEMPO+ Product was in a single paragraph in the *background* section of his report, in which he identifies TEMPO+ as a system that "uses a modular design," but he does not otherwise provide any opinion or explanation as to how TEMPO+ allegedly renders obvious the Asserted '647 Patent. Ex. 6, ¶ 41. And though Dr. Winter identified Mann '006 as part of an allegedly invalidating combination, Dr. Winter only opined that the combination of Mann '006 with two other prior art references renders obvious *claim 8* of the '647 Patent—a claim no longer at issue. Ex. 6, ¶ 131 ("In addition, in view of the Van Der Borght, Hochmair '834 and Mann '006 or Bauer references, a person of ordinary skill in the art would have found the subject matter claimed in claim 8 of Crawford '647 to have been obvious.")[2] As these passing references are insufficient to disclose any opinion that the combination of Van Der Borght, Hochmair '834, Mann '006 or MED-EL's TEMPO+ product invalidate the Asserted Claims of the '647 Patent, the Court should preclude MED-EL from offering any testimony, argument, or evidence concerning the same.

---

[2] Nor can MED-EL rely on any lay witness testimony that the Mann '006 invalidates the claims of the '647 Patent because (1) MED-EL has identified no such lay witness on its witness list; and (2) as discussed above, a "district court abuse[s] its discretion by admitting lay witness testimony regarding obviousness" or invalidity. *HVLPO2*, 949 F.3d at 687.

## AB MOTION *IN LIMINE* #3: Preclude MED-EL From Referring To Irrelevant Product Recall Or Reliability Issues

MED-EL should be precluded from attempting to confuse the jury with reference to any product recalls or reliability issues that are irrelevant to the patent infringement and invalidity issues present in this case.

During discovery, MED-EL elicited testimony from its expert, Dr. Douglas Sladen, as to alleged "weaknesses [of] AB's cochlear implant." Ex. 9 at 234-35. In response to MED-EL's counsel's question, Dr. Sladen opined at his deposition that "AB's device tends to be a bit complicated for some [] folks" and that AB's products "had to be pulled off the market for -- for its reliability." Id. Such testimony is irrelevant and would be unduly prejudicial if introduced to the jury. The jury will be tasked with determining whether MED-EL infringed AB's asserted claims and, if so, the damages AB is entitled to for MED-EL's infringement. Any alleged "reliability" or product-recall issues with AB's products, or alleged "weakness" of AB's products, are unduly prejudicial to AB, and may cause the jury to decide the case on whether AB's or MED-EL's products are more reliable or less complicated—an issue that is entirely irrelevant to the jury's task. Permitting MED-EL to present such evidence would also potentially lead to a trial-within-a-trial on whether AB's products were "a bit complicated" or "had to be pulled off the market" for alleged reliability reasons that have nothing to do with the patented inventions. Given the non-existent relevance of this information and the potential prejudice and confusion this evidence could cause, the Court should exclude it under Fed. R. Evid. 403. See, e.g. Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc., No. CIV.98-80-SLR, 2005 WL 67086, at *1 (D. Del. Jan. 5, 2005) (excluding "evidence concerning governmental investigations of FDA recalls" in a patent infringement action)

|  |  |
|---|---|
| | ASHBY & GEDDES |
| | /s/ Andrew C. Mayo |
| | _____ |
| *Of Counsel:* | Steven J. Balick (#2114) |
| | Andrew C. Mayo (#5207) |
| Marcus E. Sernel, P.C. | 500 Delaware Avenue, 8th Floor |
| Greg Polins | P.O. Box 1150 |
| Meredith Zinanni | Wilmington, DE  19899 |
| Sadaf Misbah | (302) 654-1888 |
| Tareq M. Alosh | sbalick@ashbygeddes.com |
| KIRKLAND & ELLIS LLP | amayo@ashbygeddes.com |
| 300 North LaSalle | |
| Chicago, IL  60654 | *Attorneys for Defendant* |
| (312) 862-2000 | *Counterclaim- Plaintiffs* |

Dated:  September 29, 2023