## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> *Plaintiff,* <br><br> v. <br><br> ADVANCED BIONICS, LLC, <br><br> *Defendant.* <br><br> ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG, <br><br> *Counterclaim Plaintiffs,* <br><br> v. <br><br> MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA, <br><br> *Counterclaim Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 18-1530-JDW ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COUNTERCLAIM DEFENDANTS' OPPOSITION TO AB MOTION *IN LIMINE* #1

OF COUNSEL:

Kerry L. Timbers
Sharona H. Sternberg
Lisa M. Tittemore
Katherine W. Soule
Bryan D. Harrison
Kevin R. Mosier
SUNSTEIN LLP
100 High Street
Boston, MA 02110
(617) 443-9292
ktimbers@sunsteinlaw.com
ssternberg@sunsteinlaw.com

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square 920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

ltittemore@sunsteinlaw.com
ksoule@sunsteinlaw.com
bharrison@sunsteinlaw.com
kmosier@sunsteinlaw.com

*Counsel for Counterclaim Defendants MED-EL Elektromedizinische Geräte Ges.m.b.H. and MED-EL Corporation, USA*

Dated:  October 13, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.  Introduction ............................................................................................1

II.  MED-EL timely and repeatedly disclosed its prior use invalidity defense ........................3

III.  Sonova/AB failed to seek *any* discovery from MED-EL regarding its prior use invalidity defense ..............................................................................8

IV.  Expert testimony is not required to prove invalidity ..........................................9

V.  Neither Ms. Franz nor Ms. Avitabile will present expert testimony ...............................11

VI.  The *Pennypack* factors are not relevant because MED-EL timely disclosed its defense and *Pennypack* does not support exclusion of evidence .......................................14

VII.  The testimony of Ms. Franz and Ms. Avitabile is also relevant to MED-EL noninfringement case and should not be excluded ............................................17

VIII.  Conclusion ........................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Lab'ys v. Lupin Ltd.*,
   No. 09-152-LPS, 2011 WL 1897322 (D. Del. May 19, 2011) ..........................................15, 16

*Adenta GmbH v. OrthoArm, Inc.*,
   501 F.3d 1364 (Fed. Cir. 2007)....................................................................................................13

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess,
   Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)
   ........................................................................................................................................2, 9, 10

*Bayer HealthCare LLC v. Baxalta Inc.*,
   No. 16-1122-RGA, 2019 WL 297039 (D. Del. Jan. 22, 2019).........................................14, 15

*In re Brimonidine Pat. Litig.*,
   643 F.3d 1366 (Fed.Cir. 2011).......................................................................................................2

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
   942 F.3d 1119 (Fed. Cir. 2019).....................................................................................................10

*Dowling v. City of Phila.*,
   855 F.2d 136 (3d Cir. 1988)............................................................................................................9

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
   921 F.3d 1060 (Fed. Cir. 2019).....................................................................................................10

*First Quality Tissue, LLC v. Irving Consumer Prod. Ltd.*,
   No. CV 19-428-RGA, 2020 WL 6286862 (D. Del. Oct. 27, 2020).................................16

*HSM Portfolio LLC v. Elpida Memory Inc.*,
   No. 11-770-RGA, 2016 WL 552543 (D. Del. Feb. 11, 2016) ...................................................9

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   450 F.3d 1350 (Fed. Cir. 2006)......................................................................................................2

*In re Jacoby Airplane Crash*,
   No. CIV. 99-6073 (HAA), 2007 WL 559801 (D.N.J. Feb. 14, 2007)......................................6

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
   76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015).................................7

*Juday v. Merck & Co Inc*,
   799 F. App'x 137 (3d Cir. 2020) ...................................................................................................9

ii

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
107 F. Supp. 3d 656 (E.D. Tex. 2015) (Bryson, J.), *aff'd*, 639 F. App'x 637 (Fed. Cir.
2016) ..................................................................................................................................10

*Liquid Dynamics Corp. v. Vaughan Co.*,
No. 01 C 6934, 2004 WL 2260626 (N.D. Ill. Oct. 1, 2004) ..................................................14

*In re Mercedes-Benz Anti-Tr. Litig.*,
225 F.R.D. 498 (D.N.J. 2005) ...............................................................................................15

*Meyer Intell. Props. Ltd. v. Bodum, Inc.*,
690 F.3d 1354 (Fed. Cir. 2012) ..................................................................................... *passim*

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977) .......................................................................................... *passim*

*In re Omeprazole Pat. Litig.*,
No. 00CV4467, 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) ...............................................13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016) ............................................................................................18

*Praxair, Inc. v. ATMI, Inc.*,
No. CIV. 03-1158-SLR, 2005 WL 3159054 (D. Del. Nov. 28, 2005) .....................................8

*Quinn v. Consol. Freightways Corp. of Delaware*,
283 F.3d 572 (3d Cir. 2002) ..........................................................................................16, 17

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008) ............................................................................................10

*Union Carbide Corp. v. Am. Can Co.*,
724 F.2d 1567 (Fed. Cir. 1984) ............................................................................................10

*Upsher-Smith Lab'ys, Inc. v. Pamlab, L.L.C.*,
412 F.3d 1319 (Fed. Cir. 2005) ............................................................................................11

*Vehicle IP, LLC v. AT & T Mobility LLC*,
227 F. Supp. 3d 319 (D. Del. 2016) ......................................................................................18

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) .................................................................................................14

STATUTES & RULES

Fed. R. Civ. P. 26 ...........................................................................................................................6

Fed. R. Civ. P. Rule 56 ........................................................................................................9

Fed. R. Civ. P. Rule 60(b)(6) ..............................................................................................9

RLF1 29785239v.1

The Court should deny Sonova/AB's motion *in limine* #1 and permit MED-EL to present its prior use invalidity as a defense to Sonova/AB's allegations of infringement of U.S. Patent No. 7,076,308 ("Overstreet '308") to the jury.

## I.    Introduction

By way of a brief background, Overstreet '308 teaches a method for fitting (or programming) a cochlear implant. Fitting involves setting the upper and lower limits of hearing to provide the patient with a "dynamic range," the range within which they can hear sounds. Claims 1-3 of Overstreet '308 each contain multiple steps that lead to the creation of a dynamic range. One aspect of claims 1-3 is to globally set a T-level, which comprises the lowest stimulation intensity that the patient can observe (D.I. 98 at 4), to zero, 10%, or a fraction of the M-level, which represents a level of stimulation intensity that a patient perceives as comfortably loud but not uncomfortably loud. D.I. 60 at 3. The core of MED-EL's prior use invalidity defense is that for more than two decades, long before any relevant priority dates of the '308 patent, MED-EL taught clinicians fitting MED-EL cochlear implants that one way of fitting patients is to set threshold ("THR") levels to 10% of MCL (or "M") levels. For years, MED-EL and clinicians routinely refer to this as the "10% rule."

MED-EL first disclosed its prior use invalidity defense in its Amended Invalidity Contentions, served on November 19, 2019, nearly *four* years ago. Then, one year later, on November 9, 2020, MED-EL served its Final Invalidity Contentions, again disclosing this defense and identifying additional corroborating documentary evidence. MED-EL disclosed much of the same documentation again on November 11, 2020 in its supplemental answer to interrogatory number six, including by identifying two MED-EL employees, Darla Franz and Kristin Avitabile (née Bisanar), as witnesses having factual knowledge relating to use of the

accused method and knowledge pertaining to the corroborating documentary evidence identified in its invalidity contentions. Sonova/AB's feigned surprise to MED-EL's prior use invalidity defense and the relevant witnesses is nothing more than an ill-fated attempt to hide its shortcomings in discovery, where Sonvoa/AB failed to seek *any* information regarding MED-EL's invalidity defense.

Contrary to Sonova/AB's sweeping proclamation that expert testimony is required to present or prove invalidity, that is simply not the case. The Federal Circuit has stated, in no uncertain terms, that "[t]here is no invariable requirement that a prior art reference be accompanied by expert testimony." *In re Brimonidine Pat.ent Litig.*, 643 F.3d 1366, 1376 (Fed.Cir. 2011). *See also Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc*., 853 F.2d 1557, 1562 (Fed. Cir. 1988) ("a judge may decide the legal issue of validity **unaided by expert opinion**") (emphasis added), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008); *Meyer Intell. Props. Ltd. v. Bodum, Inc*., 690 F.3d 1354, 1377 (Fed. Cir. 2012) ("*Meyer*") (overturning district court's decision to exclude lay testimony about facts within his personal knowledge relevant to prior art and invalidity).

The Federal Circuit also cautions against refusing to permit a defendant from presenting an invalidity defense because "[t]here is a 'strong public interest' in the finality of issues that may be relevant to patent validity." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc*., 450 F.3d 1350, 1359 (Fed. Cir. 2006) (quoting *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 100 (1993)). Therefore, even if the Court were to find that MED-EL's disclosure of its prior use invalidity defense was lacking in some way, it cannot possibly warrant the draconian measure of excluding MED-EL's invalidity defense altogether. *See Meyers v. Pennypack Woods Home*

*Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir. 1977) ("*Pennypack*") (setting out five factor test to determine whether to exclude late-disclosed evidence).

Finally, even if the Court were to preclude MED-EL from pursuing its prior use invalidity defense, testimony and documents regarding prior knowledge and use of the method accused of infringement is relevant to MED-EL's defense to the claims of induced infringement and willful infringement.

## II.    MED-EL timely and repeatedly disclosed its prior use invalidity defense

MED-EL's timely disclosed prior use invalidity defense is straightforward. If the jury finds that use of the accused MED-EL product directly infringes claims 1-3 of Overstreet '308, then Overstreet '308 must be invalid because MED-EL has always taught audiologists the option of programming cochlear implants in the allegedly infringing manner, long before the priority dates, *e.g.* by teaching the use of the 10% rule.[1] MED-EL intends to produce testimony from witnesses with personal knowledge of how MED-EL trained audiologists from at least 1997, and the jury will see corroborating documentary evidence to support MED-EL's prior use invalidity defense.

MED-EL first identified its prior use defense on November 19, 2019 in its Amended Invalidity Contentions. It stated:

> The method according to claims 1-3 of the '308 patent was in public use in the United States before at least the August 13, 2002 priority date. For example, the claimed methodology was in public use in the U.S. prior to at least the August 13, 2002 priority date, as described in partial detail in MED-EL Corporation, Fitting Parameters CI.Studio+, v.1.0 [MEDEL-0016455] (see, for example, slides 7 and 52), which was part of training materials used by Med-EL to train U.S. clinical audiologists.

Ex. 1, p. 9.

---

[1] So as to avoid any ambiguity, MED-EL does not believe that it infringes Overstreet '308 and will present evidence of non-infringement.

3

Then, in its Final Invalidity Contentions ("Contentions") served on Sonova/AB on November 9, 2020, MED-EL again disclosed the details of its prior use invalidity defense, adding more corroborating documentary evidence of the prior use. *See generally*, D.I. 394-2 at 7-8. Specifically, MED-EL identified art known as "Clinician Data," much of which is included in MED-EL's exhibit list. *Id.* at 7; *See* D.I. 389-4. The Clinician Data documents comprise dozens of contemporaneous patient files showing the use of the 10% rule by clinicians, training materials demonstrating that MED-EL taught and encouraged the use of the 10% rule, PowerPoint presentations denoting the use of the 10% rule by audiologists, and trip reports authored by MED-EL employees, which show their observations from field visits to audiologists offices, including discussion of the use of the 10% rule. *E.g.* Ex. 2, pp. 3-4 ("set c levels by PT response and T levels by 10% rule); Ex. 4, pp. 7 ("If setting THR at minimum or 10%...), 52 ("Find MCLs and THRs (or assign THR to 10%)…").

In its contentions, MED-EL also disclosed another corroborating document authored by Kristin Avitabile (née Bisanar). D.I. 394-2 at 8 (entry for "Bisanar, Kirstin, Trip Report, 5th European Symposium on Paediatric Cochlear Implantation, June 4-7, 2000 [MEDEL-0080432]." Additionally, on pages 11 and 12 of MED-EL's Contentions, MED-EL repeats what is wrote in its Amended Invalidity Contentions, but updates the text with new references:

> The method according to claims 1-3 of the '308 patent, under Advanced Bionics' actual and/or apparent application of the claims, was in public use in the United States before at least the August 13, 2002 priority date. For example, under Advanced Bionics' actual and/or apparent application of the claims, the claimed methodology was in public use in the U.S. prior to at least the August 13, 2002 priority date, as described in partial detail in MED-EL Corporation, Fitting Parameters CI.Studio+, v.1.0 [MEDEL-0016455] (*see, e.g.*, slides 7 and 52), which was part of training materials used by Med-EL to train U.S. clinical audiologists. ***See also* Clinician Data [MEDEL-0067372-MEDEL-0079950], [MEDEL-0066327]; *see also* Bisanar, Kirstin, Trip Report, 5th European Symposium on Paediatric Cochlear Implantation, June 4-7, 2000 (public knowledge) [MEDEL-0080432].**

4

*Id.* at pp. 11-12 (new references over Amended Invalidity Contentions in **bold**). MED-EL produced the Clinician Data documents between April and September 2020, the Bisanar Trip Report in November 2020, and other documents corroborating the prior use defense in 2019 and no later than March 2020. Fact discovery closed in this case well over a year later, on October 29, 2021 (D.I. 175), meaning that Sonova/AB had the documents corroborating the prior use defense for a year prior to the close of discovery, at a minimum.

In Exhibit D to the Contentions, MED-EL provided further detail about the Clinician Data documents and the document authored by Ms. Bisanar (now Avitabile), as well as other corroborating prior art documents. *Id.* at Ex. D, pp. 1-4. The Clinician Data documents identify Ms. Franz and Ms. Avitabile on their face. *See e.g.* Ex. 2, p. 2 (letter authored by Ms. Franz); Ex. 3, p. 2 (letter authored by Ms. Bisanar). MED-EL also included an invalidity chart that included, among other references, the Bisanar reference. *Id.* at Ex. D, pp. 7-17.

In its supplemental answer to interrogatory number six, served on Sonova/AB on November 11, 2020, two days after service of the Contentions, MED-EL disclosed Ms. Franz and Ms. Avitabile as "persons knowledgeable" of the functionality of the MAESTRO software including the ability lock THR to a fraction of MCL "and the reasons for including such functionality and any related default settings (e.g. the "Lock THR to [%]" setting) in the software." Ex. 5, pp. 16-17. As discussed in Section II below, this interrogatory does not explicitly ask for information regarding invalidity – and no interrogatory served by Sonova/AB does – but MED-EL understood that "[t]he reasons for including such functionality and any related default settings" naturally includes the long history of MED-EL training clinicians to use the 10% rule.

MED-EL's answer, therefore, put Sonova/AB on notice that Ms. Franz and Ms. Avitabile had relevant information relating to MED-EL's knowledge and decision-making related to recommended use of the accused methodology, which is relevant to MED-EL's invalidity defense as well as its non-infringement defense with respect to willfulness and specific intent to infringe. The disclosure of Ms. Franz and Ms. Avitabile through an interrogatory and through documents produced in discovery satisfied MED-EL's burdens under Rule 26. Fed. R. Civ. P. 26(e)(1)(A) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, **and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing**") (emphasis added); *In re Jacoby Airplane Crash*, No. CIV. 99-6073 (HAA), 2007 WL 559801, at *10 (D.N.J. Feb. 14, 2007) (finding that names of witnesses provided during discovery satisfied the "otherwise" exception to supplementation under Rule 26(e)).

In response to this interrogatory number six, MED-EL also identified the Clinician Data by its bates range, matching the disclosure in the Contentions. The response indicated that Ms. Franz and Ms. Avitabile have information about the Clinician Data.  Thus, in no uncertain terms, Sonova/AB was put on clear notice that both Ms. Franz and Ms. Avitabile had personal knowledge related to the documents identified in connection with MED-El's prior use invalidity defense. *Meyer*, 690 F.3d at 1374 ("we can think of no explanation for excluding prior art that was disclosed in interrogatory responses but was not relied upon in an expert report").

As Sonova/AB correctly points out, MED-EL also disclosed Ms. Franz in its supplemental initial disclosures as having knowledge of "the operation of and materials used to train, instruct, educate, or support physicians in using each of MED-EL's accused products, systems and processes." D.N. 393-4 at 4. MED-EL similarly identified Ms. Franz of having knowledge of "[m]aterials used to train, instruct, educate, or support physicians in using each of the Accused MED-EL Products or MED-EL Embodying Products" as requested by Sonova/AB in a 30(b)(6) deposition topic. Ex. 6, pp. 11:7-12:5. Significantly, and what Sonova/AB fails to mention in its motion, Sonova/AB actually deposed Ms. Franz on September 27, 2021, nearly two years after MED-EL first disclosed its prior use defense and one year after it identified additional corroborating documents with Ms. Franz's name on them. But Sonova/AB failed to ask her any questions about any of the corroborating prior art or about MED-EL's prior use defense. In fact, Ms. Franz testified about the roles she held at MED-EL from 1997 onward, including that she was a clinical research manager in charge of the COMBI 40+ study, which is the subject of many of the Clinician Data documents (some of which have her name on them). Ex. 6, pp. 42:8-44:15. *See, e.g.,* Ex. 2, pp. 2-3 (letter from Ms. Franz accepting patient into study and explicit reference to COMBI 40+ study). Nevertheless, Sonova/AB conspicuously declined to ask any questions about that study or any of the documents. *See* Ex. 6, pp. 42:8-44:15.

As is clear from MED-EL's repeated disclosure of information concerning its prior use invalidity defense and the disclosure of Ms. Franz and Ms. Avitabile, its prior use invalidity defense is hardly "newly-contrived." *Meyer* 690 F.3d at 1373 (finding district court abused its discretion by "excluding prior art that was disclosed in interrogatory responses but was not relied upon in an expert report"); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 521 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) (disclosure through

counterclaim and invalidity contentions sufficient to put party on notice of intent to pursue invalidity argument); *Cf. Praxair, Inc. v. ATMI, Inc*., No. CIV. 03-1158-SLR, 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005) (excluding reliance on prior art references **not** disclosed during discovery).

### III.    Sonova/AB failed to seek *any* discovery from MED-EL regarding its prior use invalidity defense

Sonova/AB's Motion rewrites the facts to suggest that it was MED-EL's failure to sufficiently disclose its prior use defense, when, in reality, it was Sonova/AB's failure to request *any* information from MED-EL concerning the defense that MED-EL clearly disclosed.

Sonova/AB did not seek factual information regarding MED-EL's prior use invalidity defense through any interrogatory, document request, request for admission, or 30(b)(6) deposition topic. Sonova/AB certainly would have pointed to some discovery request if it had sought this information from MED-EL, but its motion is conspicuously silent on this topic. Sonova/AB's failure to seek discovery of a properly disclosed defense should not be used to suggest that MED-EL failed to disclose any information.

In addition, MED-EL did not have to disclose to Sonova/AB that it would not be relying on an expert to support its prior use invalidity defense until *after* the close of fact discovery. Fact discovery in this case closed on October 29, 2021, and affirmative expert reports were not due until November 21, 2021. D.N. 175. Although the fact discovery deadline moved several times, the sequence of fact and expert discovery in this case has never changed. *See e.g.* D.N. 17 (first scheduling order setting fact discovery deadline for June 5, 2020 and affirmative expert report deadline for June 26, 2020). Sonova/AB, therefore, was on notice that it needed to conduct full and complete fact discovery on all topics, including MED-EL's invalidity defenses, without waiting to see whether MED-EL would put forward any expert testimony on the topic.

Sonova/AB also takes issue with MED-EL's interrogatory answer identifying Ms. Franz and Ms. Avitabile "as having knowledge of the operations of MED-EL's accused products available *since 2012*." D.I. 293 at 6 (emphasis in original). Sonova/AB's emphasis on "since 2012" makes it seem as though MED-EL limited its answer in some way. However, it was Sonova/AB that limited the question. MED-EL did not limit its answer or indicate, in any way, that Ms. Franz or Ms. Avitabile, did not have knowledge that predated 2012. As explained in Section I, this interrogatory covers the pre-2012 time period because "the reasons for including [the] functionality" of having the ability to lock THR to a percentage of MCL necessarily requires evidence of what MED-EL advised clinicians before implementing that functionality. Ms. Franz even testified about her roles at MED-EL from before 2012, but Sonova/AB failed to ask any questions regarding prior use of the accused method. *See supra* Section II.

Sonova/AB cannot use its shortcomings in discovery to suggest that MED-EL acted improperly. *See HSM Portfolio LLC v. Elpida Memory Inc*., No. 11-770-RGA, 2016 WL 552543, at *2 (D. Del. Feb. 11, 2016) (refusing to exclude prior art corroboration evidence since it was "a problem of Plaintiff's own making" since they were "dilatory" in discovery and "Plaintiffs cannot now claim prejudice and surprise")*; see also Dowling v. City of Phila.,* 855 F.2d 136, 140 (3d Cir. 1988) (finding that the failure to diligently pursue discovery was basis for denying Rule 56(f), now Rule 56(d), motion); *Juday v. Merck & Co Inc*, 799 F. App'x 137, 138 (3d Cir. 2020) (finding that a "deliberate, maybe improvident choice not to pursue discovery in this litigation" not a basis for post judgment relief pursuant to Rule 60(b)(6)).

## IV.   Expert testimony is not required to prove invalidity

It is well established that parties are not required rely on expert testimony to prove invalidity. "[A] judge may decide the legal issue of validity **unaided by expert opinion**." *Avia*

9

*Grp. Int'l, Inc.*, 853 F.2d at 1562 (emphasis added). The case law cited by Sonova/AB is not to the contrary. For example, in *Sundance, Inc. v. DeMonte Fabricating Ltd.*, the Federal Circuit found that the district court abused its discretion by permitting an unqualified expert in the art to testify on the issues of infringement or validity. 550 F.3d 1356, 1361-62 (Fed. Cir. 2008). Nevertheless, the Federal Circuit found the patent in question to be invalid without the need for expert testimony. *Id.* at 1365.

Additionally, expert testimony to prove invalidity is not required simply because the parties chose to engage experts on the issue of infringement. For example, in *Union Carbide Corporation v. American Can Company*, the Federal Circuit affirmed a finding of invalidity where the defendant proffered no expert but the plaintiff did. 724 F.2d 1567, 1573 (Fed. Cir. 1984). Even though explanatory testimony was not necessary, the plaintiff "did give the district court the benefit of such analysis through" its expert. *Id.* The Federal Circuit was able to review the prior art own its own, regardless, and affirm the finding of invalidity. *Id.; see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.,* 942 F.3d 1119, 1126 (Fed. Cir. 2019) (upholding finding of invalidity where defendant presented an expert but reliance on testimony not required for invalidity finding); *Kroy IP Holdings, LLC v. Safeway, Inc.,* 107 F. Supp. 3d 656, 671 (E.D. Tex. 2015) (Bryson, J.) (granting summary judgment of anticipation in absence of expert testimony), *aff'd,* 639 F. App'x 637 (Fed. Cir. 2016); *cf. E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019) (finding cross examination of defendants' invalidity expert sufficient to withstand claim of invalidity).

The Overstreet '308 patent is not particularly complicated, but expert testimony will assist the jury in understanding what cochlear implants are and the importance of properly fitting those implants, to which Overstreet '308 relates. Importantly, Sonova/AB's infringement expert,

10

Dr. Popelka, will testify, on a claim element by claim element basis, why he believes that MED-EL infringes claims 1-3 of Overstreet '308, including with respect to MED-EL's instructions to audiologists concerning setting thresholds to a percentage of the MCL levels. MED-EL's fact witnesses, namely Ms. Franz and Ms. Avitabile, will testify that MED-EL provided the identical recommendations to audiologists *before* the relevant priority dates, which was adopted by clinicians as demonstrated in the corroborating documents.

With this explanatory background from the experts, and factual testimony from lay witnesses with personal knowledge, the jury will not have any difficulty assessing invalidity and understanding the "century-old axiom of patent law [that] holds that a product 'which would literally infringe if later in time anticipates if earlier.'" *Upsher-Smith Lab'ys, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (quoting *Schering Corp. v. Geneva Pharms., Inc*., 339 F.3d 1373, 1379 (Fed.Cir.2003)). Because MED-EL's invalidity argument is straightforward, no expert testimony is required. For example, in *Meyer,* the Federal Circuit reversed a district court decision precluding a prior art defense where that defense was disclosed in an interrogatory, and the expert was not permitted to testify about it, since "there is no invariable requirement that a prior art referenced be accompanied by expert testimony" especially where the technology and issues involved are simple. *Meyer*, 690 F.3d at 1373-74 (allowing lay witness testimony in lieu of expert testimony regarding prior public use prior art) (citing *In re Brimonidine Patent Litig*., 643 F.3d at 1376).

### V.   Neither Ms. Franz nor Ms. Avitabile will present expert testimony

MED-EL will not present Ms. Franz or Ms. Avitabile as experts. In fact, counsel for MED-EL represented this fact during the meet and confer preceding the filing of the Parties' respective motions *in limine*. To be clear, MED-EL agrees with Sonova/AB that Ms. Franz and

11

Ms. Avitabile may not testify as experts and MED-EL does not intend to elicit any opinion testimony from them. Instead, MED-EL expects that they will testify as lay witnesses to facts within their personal knowledge about prior knowledge and prior use of the method accused of infringement and how audiologists have programmed MED-EL's cochlear implants since as early as 1997. *See Meyer*, 690 F.3d at 1377.

In *Meyer*, the plaintiff sought to exclude lay witness testimony of the defendant's CEO regarding the defendant's own potentially invalidating prior art system, the Bodum French Press. *See id.* at 1376. The district court granted the plaintiff's motion *in limine* to preclude the CEO from testifying because the lay testimony would "expand the scope of the prior art on which [the defendant's expert] relied" and because it would allow defendant "to take an end run around its own chosen expert's opinion." *Id*. at 1364, 1377. The district court also precluded the defendant's expert from discussing the Bodum French Press, despite the fact that it was included in his report, because "it was an attempt to backdoor the court's prior rulings limiting the prior art on which Bodum could rely." *Id.* at 1364.

On appeal, the Federal Circuit reversed, finding that the district court "abused its discretion in granting [the plaintiff's] motions *in limine* and that these evidentiary errors were prejudicial because they prevented [the defendant] from presenting its obviousness defense." *Id.* at 1372. As a result of these prejudicial errors, the Federal Circuit remanded for a new trial. *Id.* The Federal Circuit could "**think of no explanation for excluding prior art that was disclosed in interrogatory responses but was not relied upon in an expert report**." *Id.* at 1374 (emphasis added). There was no danger that the CEO would provide expert testimony because the defendant stated that the CEO would not offer any such testimony on invalidity but would, instead, offer testimony regarding his personal knowledge of the prior art. *Id.* In addition, there

12

was "no problem with having [the] CEO testify to factual matters within his personal knowledge where those facts are supported by corroborating documentation" and that exclusion of the evidence would "result[] in a one-sided trial" where defendant would be robbed of its obviousness case. *Id*; *see also Adenta GmbH v. OrthoArm, Inc*., 501 F.3d 1364, 1372 (Fed. Cir. 2007) (affirming jury verdict of invalidity based upon testimony of five, non-expert witnesses).

Like in *Meyer*, MED-EL intends to elicit only factual testimony from Ms. Franz and Ms. Avitabile. MED-EL expects that Ms. Franz and Ms. Avitabile will testify about, among other things, prior uses of MED-EL's software, that they have been instructing audiologists to use the 10% rule since as early as 1997, and corroborating documents from before the critical date of which they have personal knowledge (*e.g.* the Clinician Data including patient files, trip reports, and presentation materials).

In addition, MED-EL expects that Ms. Avitabile will offer testimony regarding a document titled "MED-EL Programming Hints," including when she wrote the document, why she wrote the document, and how MED-EL used the document with audiologists. Ex. 7 (stating "You may also set threshold at 10% of MCL). Of note, Sonova/AB cited to the MED-EL programming Hints documents 11 separate times in its infringement contentions. Ex. 8, p. 8, 10, 13, 15, 16, 22, 24, 27, 29, 30, 33. Despite the relative importance of this document to Sonova/AB's infringement case, they did not ask any witness about it in discovery.

In addition to having personal knowledge relevant to MED-EL's prior use defense, Ms. Franz and Ms. Avitabile are both persons of ordinary skill in the art ("POSITA"). They are both audiologists with at least two to three years of experience fitting cochlear implant systems (D.N. 393, p. 9), qualifying them to testify about the prior art as lay witnesses. *In re Omeprazole Pat. Litig*., No. 00CV4467, 2002 WL 287785, at *6 (S.D.N.Y. Feb. 27, 2002) (holding that "fact

13

witnesses who are skilled in the art, including the named inventors of the '505 and '230 patents, are competent to testify concerning prior art documents"); *Liquid Dynamics Corp. v. Vaughan Co.*, No. 01 C 6934, 2004 WL 2260626, at *9 (N.D. Ill. Oct. 1, 2004) (denying motion *in limine* seeking to preclude POSITAs with personal knowledge of prior art from testifying about prior art).

For these reasons, there is no basis to preclude Ms. Franz and Ms. Avitabile from testing about prior art with their personal knowledge.

## VI.    The *Pennypack* factors are not relevant because MED-EL timely disclosed its defense and *Pennypack* does not support exclusion of evidence

MED-EL timely disclosed its prior use invalidity defense, as well as the witnesses and documents it intends to rely upon to support that defense. *See supra* Sections II and III. Therefore, there is no reason for the Court to address the *Pennypack* factors,[2] as requested by Sonova/AB in its Motion. *See e.g.*, *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-1122-RGA, 2019 WL 297039, at *1 (D. Del. Jan. 22, 2019) (*Pennypack* factors applied only *after* the Court determined that there was a failure to disclose).

Even if the Court were to conclude that MED-EL's disclosure was untimely (which it was not), the *Pennypack* factors do not support the extreme sanction of exclusion of MED-EL's invalidity defense. "The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part

---

[2] The Third Circuit uses the *Pennypack* factors to assess whether to exclude late-disclosed evidence and require consideration of "(1) 'the prejudice or surprise in fact of the party against whom' … the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such…evidence would 'disrupt the orderly and efficient trial of the case …'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Pennypack*, 559 F.2d at 904-905).

of the proponent of the testimony." *In re Mercedes-Benz Anti-Tr. Litig.*, 225 F.R.D. 498, 504–05 (D.N.J. 2005) (collecting cases). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Bayer HealthCare LLC*, 2019 WL 297039, at *1 (citing *Pennypack*, 559 F.2d at 904-05) (alternations and quotation marks in original). Sonova/AB "must meet a 'stringent burden'" to demonstrate that the extreme remedy of exclusion is warranted." D.I. 211 at 2 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 692 (D. Del. 2010). All five *Pennypack* factors should be balanced to assess whether exclusion is appropriate. *Abbott Lab'ys v. Lupin Ltd.*, No. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) (finding that the "overall balance [of the *Pennypack* factors] does not favor exclusion").

Sonova/AB has not met its "stringent burden." First, Sonova/AB does not even address the fifth *Pennypack* factor – the importance of the information withheld. *See* D.I. 393 at 8-9 (reciting the factors but not analyzing the fifth factor). Here, the evidence that Sonova/AB seeks to exclude is critically important – it is the entirety of MED-EL's invalidity defense, including testimony from Ms. Franz and Ms. Avitabile. There is a strong public policy argument for deciding validity questions on the merits. *Abbott Lab'ys*, 2011 WL 1897322, at *5 (refusing to impose the "extreme sanction" of exclusion of invalidity defenses in light of public policy considerations) (citing *U.S. v. Glaxo Group Ltd.*, 410 U.S. 52, 69 (1973) ("[T]here is a public interest favoring the judicial testing of patent validity…For when a patent is invalid, the public parts with the monopoly grant for no return, the public has been imposed upon and the patent clause subverted.")).

15

In light of the strong public policy, this factor should weigh more heavily than the other four. *See id.* (denying motion to preclude invalidity defense and finding that the importance of the invalidity contentions "weigh[ed] heavily" against exclusion); *First Quality Tissue, LLC v. Irving Consumer Prod. Ltd*., No. CV 19-428-RGA, 2020 WL 6286862, at *3 (D. Del. Oct. 27, 2020) (finding that the exclusion of "important prior art" would be an "extreme sanction" and "weigh[ed] against striking it"); *accord Quinn v. Consol. Freightways Corp. of Delaware,* 283 F.3d 572, 577 (3d Cir. 2002) (finding that district court abused its discretion by excluding "crucial testimony" from witness that would corroborate plaintiff's testimony). The fifth *Pennypack* factor therefore weighs heavily against exclusion.

Second, Sonova/AB's allegation of bad faith, relevant to the fourth *Pennypack* factor, is baseless and unfounded. Sonova/AB has known about MED-EL's prior use invalidity defense for nearly four years, since MED-EL served its Amended Invalidity Contentions. *Cf. Quinn,* 283 F.3d at 577 (not crediting "claim of a last minute surprise" when defendant knew of relevant testimony for seven months). Any suggestion that MED-EL "engaged in a strategic manipulation of the discovery process" (D.I. 393 at 13 (internal quotations marks and alteration omitted)) is nothing more than revisionist history. Frankly, MED-EL is confounded why Sonova/AB is now feigning surprise. Sonova/AB had the documents and names of witnesses pertinent to the prior use invalidity defense, and even deposed Ms. Franz, but either neglected to or specifically chose not to seek any specific information about the defense in discovery. There is simply no bad faith on MED-EL's part for timely disclosing its defense and confirming that it intends to pursue the defense at trial in the Joint Pretrial Memorandum. The fourth *Pennypack* factor therefore weighs against exclusion.

Third, with respect to the first three factors – prejudice, ability to cure, and disruption of trial, which Sonova/AB addresses together – Sonova/AB's arguments flounder. Sonova/AB prejudiced itself by failing to take any discovery concerning MED-EL's prior use defense. Sonova/AB has had all the necessary information for nearly three years but failed to act on it. In fact, Sonova/AB actually charted one of the documents that MED-EL intends to use at trial with Ms. Avitabile in Sonova/AB's infringement contentions. Ex. 8, p. 8, 10, 13, 15, 16, 22, 24, 27, 29, 30, 33. Furthermore, any possible prejudice to Sonova/AB is minimized because it is familiar with the witnesses and the documents on which they will rely at trial and it has the ability to cross examine the witnesses at trial. *See Pennypack*, 559 F.2d at 905 ("The possible prejudice to Pennypack was minimized not only by Pennypack's familiarity at least with Sweeney, its former president, but by the sequence of events"); *Quinn*, 283 F.3d at 577 (finding that prejudice "neutralized" by cross examination at trial). The first three *Pennypack* factors therefore weigh against exclusion.

**VII.    The testimony of Ms. Franz and Ms. Avitabile is also relevant to MED-EL noninfringement case and should not be excluded**

Even if the Court were to hold that MED-EL cannot pursue its Overstreet '308 invalidity defense, it should nevertheless permit both Ms. Franz and Ms. Avitabile to testify about prior knowledge and public use of the 10% rule because the evidence is equally relevant to MED-EL's defenses to induced infringement and willful infringement.[3]

Proof of induced infringement requires that (1) a third party directly infringed the asserted patents; (2) the defendant induced those infringing acts; and (3) the defendant knew the

---

[3] Sonova/AB's Motion does not seek to exclude Ms. Franz' testimony regarding the MED-EL MAESTRO software from 2012 to the present, and MED-EL intends to present her testimony on this topic at trial regardless of the outcome of this motion *in limine*.

acts it induced constituted infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 843 F.3d 1315, 1332 (Fed. Cir. 2016). Like induced infringement, willful infringement requires a finding that the infringer acted with a specific intent to infringe. *Vehicle IP, LLC v. AT & T Mobility LLC*, 227 F. Supp. 3d 319, 330 (D. Del. 2016). Ms. Franz and Ms. Avitibile's knowledge of how MED-EL instructed audiologists to use MED-EL's fitting software from as early as 1997 is relevant to MED-EL's knowledge of infringement and/or specific intent to infringe. The jury could reasonably conclude that, because MED-EL has always instructed audiologists to use the 10% rule, long before the patent application was even filed, MED-EL did not have the requisite intent necessary to find induced infringement or willful infringement. Therefore, at the very least Ms. Franz and Ms. Avitabile should be permitted to testify about the use of MED-EL's fitting software and to rely on documents from the same time period to support MED-EL's noninfringement defenses.

**VIII.   Conclusion**

For the foregoing reasons, MED-EL respectfully request that the Court deny Sonova/AB's motion *in limine* #1.

18

|  | /s/ Frederick L. Cottrell, III |
|---|---|
| OF COUNSEL: | Frederick L. Cottrell, III  (#2555) |
|  | Christine D. Haynes (#4697) |
| Kerry L. Timbers | Richards, Layton & Finger, P.A. |
| Sharona H. Sternberg | One Rodney Square |
| Lisa M. Tittemore | 920 North King Street |
| Katherine W. Soule | Wilmington, DE 19801 |
| Bryan D. Harrison | (302) 651-7700 |
| Kevin R. Mosier | cottrell@rlf.com |
| SUNSTEIN LLP | haynes@rlf.com |
| 100 High Street |  |
| Boston, MA 02110 | *Attorneys for Plaintiffs/Counterclaim Defendants* |
| (617) 443-9292 |  |
| ktimbers@sunsteinlaw.com |  |
| ssternberg@sunsteinlaw.com |  |
| ltittemore@sunsteinlaw.com |  |
| ksoule@sunsteinlaw.com |  |
| bharrison@sunsteinlaw.com |  |
| kmosier@sunsteinlaw.com |  |

Dated:  October 13, 2023

19