# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br>*Plaintiff*,<br>v.<br><br>ADVANCED BIONICS, LLC,<br>*Defendant*.<br><br>———————————————<br>ADVANCED BIONICS, LLC, ADVANCED BIONICS AG, and SONOVA AG,<br>*Counterclaim Plaintiffs*,<br>v.<br><br>MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H. and MED-EL CORPORATION, USA,<br>*Counterclaim Defendants*. | C.A. No. 18-1530-JDW |

## MED-EL'S OPPOSITION TO
## ADVANCED BIONICS' MOTION TO STRIKE

| | |
|---|---|
| OF COUNSEL:<br><br>Kerry L. Timbers<br>Lisa M. Tittemore<br>Sharona H. Sternberg<br>Sunstein LLP<br>100 High Street<br>Boston, MA 02110<br>(617) 443-9292<br><br>December 6, 2023 | Frederick L. Cottrell, III  (#2555)<br>Christine D. Haynes (#4697)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>haynes@rlf.com<br><br>*Attorneys for Plaintiffs/Counterclaim Defendants* |

MED-EL respectfully requests the Court deny Advanced Bionics' Motion to Strike Portions of Barry Sussman's Supplemental Damages Report (D.I. 412), because the information Advanced Bionics ("AB") seeks to strike is merely a correction of the calculations presented by Advanced Bionics' damages expert, Julie Davis, which she first raised in her Reply Report. Given that Ms. Davis herself propounded this theory—not Mr. Sussman, who merely seeks to correct the calculation introduced by Ms. Davis—there is neither prejudice nor surprise to AB. Instead, it is MED-EL who would be prejudiced if Mr. Sussman is not permitted to explain to the jury at trial the significantly lower damages amount that results from the corrected calculations.

Specifically, in her Reply Report, Ms. Davis presents a new theory of damages in response to points made by Mr. Sussman in his Rebuttal Report.[1] Ms. Davis' calculations are based on statements in the Vaerenberg article[2] published in 2014, which posits that "70% of cochlear implant centers did not change MED-EL's default setting for its threshold (THR) parameter during the initial fitting or switch-on session." D.I. 412-5 at 6-7. Applying this "70% rule," Ms. Davis offers an alternative damages theory relating to the Overstreet '308 patent, in which she reduces the royalty base used in her initial calculations by 30% to reflect that 70% of the centers were using MED-EL's default setting of the accused method. D.I. 412-5 at FN 40. Ms. Davis raised this alternative damages theory for the first time in her reply report. *See* Exhibit 1 (Expert Report and Disclosure of Julie L. Davis)[3] (no reference to the "70% rule" in Ms. Davis' opening expert report).

---

[1] In doing so, Ms. Davis relies on the Reply Expert Report of Gerald R. Popelka, Ph.D. ("Popelka Reply Report"), dated January 13, 2022, approximately one month after Mr. Sussman presented his opinions in his Rebuttal Report, which was served December 17, 2021.

[2] MED-EL reserves all rights to question the underlying assumptions, methodology, and conclusions of this article.

[3] Pages 30 and 36 of the Expert Report and Disclosure of Julie L. Davis, dated November 12, 2021, are omitted from Exhibit 1 in order to protect Advanced Bionics' confidential information. MED-EL and Advanced Bionics jointly stipulate that pages 30 and 36 of Ms. Davis' report do not contain any references relevant to the theory of damages at issue in Advanced Bionics's Motion to Strike

1

When Ms. Davis raised this new theory of damages in her Reply Report, however, her calculations failed to take into account that the accused method of MED-EL's MAESTRO software was not incorporated as a default setting in MED-EL's MAESTRO software until July 24, 2018. *See* D.I. 412-1 (Sussman Supplemental Report), ¶ 11. Accordingly, in the Sussman Supplemental Report, Mr. Sussman corrects Ms. Davis' calculation, which should have reduced the royalty base by <u>70% (not 30%)</u> for the period from November 28, 2012 – July 24, 2018. Mr. Sussman made this correction assuming that, if the relevant method was not incorporated in the default setting prior to July 24, 2018, *at most* 30% of users would have been using that method prior to July 24, 2018 (even though it also could have been a much lower number, e.g., zero, who were actually using it), and therefore the damages amount should have been reduced by 70% during that period. *See* D.I. 412-1 (Sussman Supplemental Report), ¶ 11, Exhibit D.1.

Thus, the *Pennypack* factors are inapplicable because Mr. Sussman did not untimely disclose a new damages theory; rather, he was only responding to the theory introduced by Ms. Davis and correcting her calculations under that theory.[4] The damages theory was disclosed in January 2022 by Ms. Davis. D.I. 412-5; *see e.g.*, *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-1122-RGA, 2019 WL 297039, at *1 (D. Del. Jan. 22, 2019) (*Pennypack* factors applied only *after* the Court determined that there was a failure to disclose). Even if the Court were to conclude that

---

or MED-EL's Answering Brief in Opposition. Page 30 only contains information regarding certain AB license agreements, and page 36 contains revenue and profit information for the '747 patent no longer at issue in this litigation. Further, a redacted version of page 36 has previously been provided to this Court. D.I. 270-1 at 7.

[4] The Third Circuit uses the *Pennypack* factors to assess whether to exclude late-disclosed evidence and require consideration of "(1) 'the prejudice or surprise in fact of the party against whom' … the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such…evidence would 'disrupt the orderly and efficient trial of the case …'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Pennypack*, 559 F.2d at 904-905).

Mr. Sussman's correction to Ms. Davis' calculations was untimely, the *Pennypack* factors do not support the extreme sanction of exclusion.

*No Prejudice*. First, Mr. Sussman's corrected calculations do not prejudice AB. AB cannot reasonably be prejudiced by addressing at trial the theory <u>raised by its own damages expert</u>. D.I. 412-5. Accordingly, the first *Pennypack* factor weighs against exclusion.

*No Need to Cure*. Because there is no prejudice to AB, there is no need to cure, so the second *Pennypack* factor weighs against exclusion. To the extent that AB argues it will be prejudiced by the argument <u>raised by its own damages expert</u>, such "prejudice" is minimized and readily curable without the extreme remedy of exclusion of Mr. Sussman's testimony. AB will have an opportunity to cross-examine Mr. Sussman at trial, and Ms. Davis has already offered an opinion on her theory. *See Quinn v. Consol. Freightways Corp. of Delaware,* 283 F.3d 572, 577 (3d Cir. 2002) (finding that prejudice "neutralized" by cross-examination at trial).

*No Disruption of Trial*. Regarding the third *Pennypack* factor, allowing Mr. Sussman's calculations in his supplemental report will not disrupt the orderly and efficient trial of the case. Ms. Davis raised the theory in her written reports. Accordingly, that theory is already an issue for trial, and Mr. Sussman will simply be correcting the calculation made by Ms. Davis. Accordingly, the third *Pennypack* factor weighs against exclusion of Mr. Sussman's corrected calculations.

*No Bad Faith.* AB does not suggest that MED-EL has acted in bad faith, nor do they have any reasonable basis to do so. This *Pennypack* factor weighs against exclusion or is neutral.

*Important to Fair Trial*. Finally, Mr. Sussman's corrected calculation is important to ensure that the jury has a fair understanding of Ms. Davis' assessment of AB's damages. To the extent that the jury agrees with Ms. Davis' "70% rule" theory of damages, it is important that they understand that MED-EL's MAESTRO software did not incorporate the accused method as a

3

default setting during the entire damages period, but only since 2018, which requires correction of the calculations provided by Ms. Davis. Accordingly, this factor weighs against exclusion of Mr. Sussman's corrected calculations. "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Bayer HealthCare LLC*, 2019 WL 297039, at *1 (citing *Pennypack*, 559 F.2d at 904-05) (alternations and quotation marks in original).

"The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." *In re Mercedes-Benz Anti-Tr. Litig.*, 225 F.R.D. 498, 504–05 (D.N.J. 2005) (collecting cases). AB "must meet a 'stringent burden'" to demonstrate that the extreme remedy of exclusion is warranted." D.I. 211 at 2 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 692 (D. Del. 2010)). All five *Pennypack* factors should be balanced to assess whether exclusion is appropriate. *Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) (finding that the "overall balance [of the *Pennypack* factors] does not favor exclusion"). Applying the *Pennypack* factors here, it is clear that the factors weigh against exclusion of Mr. Sussman's calculations and that Mr. Sussman's corrected calculations should be permitted.

The cases relied upon by Advanced Bionics are inapposite and do not compel a different result. For example, in *TQ Delta, LLC v. Adtran, Inc.*, No. 14-cv-954-RGA, 2021 WL 1200594, at *2 (D. Del. Mar. 30, 2021), the court excluded that plaintiff's technical expert's supplemental invalidity opinions, offered in response to the defendant's expert's reply report, because the defendant's expert had not, in fact, raised entirely new issues in his reply report. By contrast, Ms.

4

Davis raised an entirely new, alternative theory of damages in her reply report. Mr. Sussman merely corrects Ms. Davis' erroneous calculations.

In *Cirba Inc. v. VMware, Inc.*, No. 19-742-GBW, 2023 WL 6799267, at *2-4 (D. Del. Mar. 30, 2023), another case relied upon by Advanced Bionics, the plaintiff's technical expert waited until after the deadline to serve final infringement contentions to raise entirely new theories of infringement. As explained by the Court, it is the plaintiff's burden to prove infringement, and allowing the plaintiff's untimely infringement opinions would "eviscerate [plaintiff's] obligation to provide adequate notice of its theories of infringement." *Id.* at *2. By contrast, Mr. Sussman has not raised any new theories of damages. *See also Bradley v. Amazon.com, Inc.*, No. CV 17-1587, 2023 WL 2574572, at *14-15 (E.D. Pa. Mar. 17, 2023), reconsideration denied, 2023 WL 2843788 (E.D. Pa. Apr. 6, 2023) (excluding expert's affirmative opinions improperly expressed in rebuttal report, *which contradicted* opinions in his prior expert reports).

Unlike the cases cited by Advanced Bionics, Mr. Sussman did not introduce a new theory in his supplemental report, or even comment on the reliability of the theory presented in Ms. Davis' reply report, but instead simply corrects Ms. Davis' calculations. D.I. 412-1 (Sussman Supplemental Report), ¶ 11. Had Ms. Davis raised her "70% rule" theory in her opening report, Mr. Sussman would have had an opportunity to address it in his rebuttal report and would have done so at that time. As it was, the next opportunity for Mr. Sussman to address Ms. Davis' "70% theory" was when he submitted his supplemental expert report.

For the foregoing reasons, MED-EL respectfully requests the Court deny Advanced Bionics' Motion to Strike Portions of Barry Sussman's Supplemental Damages Report.

| | |
|---|---|
| OF COUNSEL: | /s/ Frederick L. Cottrell, III<br>Frederick L. Cottrell, III  (#2555)<br>Christine D. Haynes (#4697) |
| Kerry L. Timbers<br>Lisa M. Tittemore<br>Sharona H. Sternberg<br>Sunstein LLP<br>100 High Street<br>Boston, MA 02110<br>(617) 443-9292<br>ktimbers@sunsteinlaw.com<br>ltittemore@sunsteinlaw.com<br>ssternberg@sunsteinlaw.com | Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>haynes@rlf.com<br><br>*Attorneys for Plaintiffs/Counterclaim Defendants* |

Dated:  December 6, 2023

6