IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MED-EL ELEKTROMEDIZINISCHE GERÄTE GES.M.B.H.** *et al.*, <br><br> *Plaintiffs,* <br> v. <br><br> **ADVANCED BIONICS, LLC, et. al,** <br><br> *Defendants.* | Case No. 1:18-cv-01530-JDW |

## MEMORANDUM

Motions to seal judicial records are a big deal. They seek to shield from public view information that judges consider when rendering their decisions. Sealing orders deprive the public of information that it can use to assess a judge's ruling, and they deprive lawyers and parties information that they can use to distinguish or analogize a case—a fundamental part of the development of the law. Given how important sealing motions are, courts require specificity before granting them, not just vague generalities. And that's particularly the case in this motion, where MED-EL[1] asks me to seal information attached to posttrial motions that is of a piece with information that was disclosed during a public trial. To support such a request, MED-EL needs specifics about why I should seal the information. But it doesn't have those specifics. Instead, it has only a generalized assertion

---

[1] "Med-El" refers to MED-EL Elektromedizinische Gerate Ges.m.b.H. and MED-EL Corporation, USA

that its competitors will be able to use the information attached to the posttrial motions. But it doesn't say how, and I can't see it, so I will deny its motion.

## I.     RELEVANT BACKGROUND

On December 14, 2023, a jury determined that MED-EL willfully infringed United States Patent No. 7,076,308 and United States Patent No. 8,270,647, which belong to Advanced Bionics, LLC, Advanced Bionics AG, and Sonova AG (together "Advanced Bionics" or "AB"). The jury also determined that AB was entitled to damages because of MED-EL's infringement.

Following the entry of a judgment against MED-EL, AB has moved for various forms of post-trial relief, including treble damages for willful infringement, an award of attorney's fees, supplemental damages, an ongoing royalty, and both pre- and post-judgment interest. At trial, AB's damages expert, Julie Davis, testified that the royalty base included a total of 47,700 sound processors for the '308 Patent and 7,297 RONDO sound processors for the '647 Patent. To calculate pre- and post-judgment interest, Ms. Davis applied interest on a quarterly basis. Thus, the appendix to her declaration in support of AB's post-trial motion reveals MED-EL's unit sales on a quarterly basis, as opposed to the aggregate amount. Now, MED-EL has asked me to keep this information from public view. The motion to seal is ripe for disposition.

## II.   LEGAL STANDARD

The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, I apply Third Circuit law with respect to motions to seal in patent cases.

The common law presumes that the public has a right of access to judicial records. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "In the Third Circuit, the right is particularly robust." *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding*, No. 19-cv-209, 2020 WL 2949742, at *7 (D. Del. Mar. 25, 2020), *report and recommendation adopted in part*, 2020 WL 2915781 (D. Del. June 3, 2020). "A 'judicial record' is a document that 'has been filed with the court … or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" *Avandia*, 924 F.3d at 672. (quotation omitted).

To overcome the strong presumption of access that attaches to judicial records, a movant must show that an interest in secrecy outweighs the presumption by demonstrating that the material is the kind of information that courts will protect **and**

that disclosure will work a clearly defined and serious injury to the party seeking closure. *See id.* (emphasis added). A party seeking to file material under seal must make a specific showing; "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quotation omitted). The Court "must 'conduct[ ] a document-by-document review' to determine whether sealing is warranted. *Id.* (same). That standard does not vary depending on the level of public interest in a case or which members of the public might be interested in it.

## III. DISCUSSION

As I have explained in prior Orders in this case, confidential financial and business information—such as MED-EL's unit sales of audio processors—is the sort of information that courts may protect from public view. (*See, e.g.*, D.I. 274, 414.)

However, the Parties' Joint motion to seal portions of Appendix A to Julie Davis's declaration falls short because MED-EL does not articulate a sufficient explanation of how it will suffer harm if its unit sales—which were disclosed in open court at trial—appear on the public docket, broken down on a quarterly or annual basis. MED-EL's declaration from Mario Konegger, its Head of IP, contains numerous references to "competitive harm" and "competitive disadvantage," but it doesn't explain how or why the disclosure of this information in a slightly different form than what was disclosed at trial will lead to that harm. Even Mr. Konegger's purported example doesn't tell me much.

4

Instead, he just resorts to a conclusory statement of competitive harm: "public access or disclosure of MED-EL's historical and current quarterly unit sales would provide MED-EL's competitors with insight regarding the size and strength of MED-EL at different points in time, which could cause competitive harm to MED-EL." (D.I. 448 at ¶ 17.) He doesn't explain how a competitor would use this information to harm MED-EL, and it is not my job to guess. Similarly, he claims that the disclosure of unit sales data in Appendix A "would allow MED-EL's competitors to understand changes to MED-EL's unit sales between any given year or quarter, and would provide MED-EL's competitors with insight for strategic decisions around sales of competing products, which would cause competitive harm to MED-EL." (*Id.*) Certainly, competitors will see differences in units sales from each quarter and year, but there is no accompanying information explaining those differences. Thus, I strain to see how a competitor will make use of this information to MED-EL's detriment. That is especially true with respect to the RONDO processor, which MED-EL stopped selling in 2020.

Previously, I permitted MED-EL to seal similar information regarding its unit sales in this case, but that was before trial. Since then, MED-EL's total unit sales were disclosed in open court. If there is such an incredible difference between having that information disclosed on an annual or quarterly basis, then MED-EL had to do a better job of explaining it to me. Invoking the phrase "competitive harm" as some sort of talismanic

language is not enough. Parties seeking to keep judicial records from the eyes of the public must overcome a much higher burden.

## IV.     CONCLUSION

MED-EL has not met its burden to demonstrate that the disclosure of its unit sales on an annual and quarterly basis, as set forth in Appendix A to Julie Davis's declaration, is all that much different than the disclosures of sales that were made during trial in this matter. As such, I will deny MED-EL's motion to seal that information. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J**.

February 26, 2024